## LATHROP, ASSIGNEE, *v.* DRAKE ET AL.

Under the Bankrupt Act of March 2, 1867 (14 Stat. 517), an assignee in bankruptcy, without regard to the citizenship of the parties, could maintain a suit for the recovery of assets in a circuit court of the United States in a district other than that in which the decree of bankruptcy was made.

APPEAL from the Circuit Court of the United States for the Eastern District of Pennsylvania.

Mr. *David C. Harrington* and Mr. *F. Carroll Brewster* for the appellant.

Mr. *William H. Armstrong, contra.*

MR. JUSTICE BRADLEY delivered the opinion of the court.

The question in this case is, whether, under the Bankrupt Act as passed in 1867, an assignee in bankruptcy, without regard to the citizenship of the parties, could maintain a suit for the recovery of assets in a circuit court of the United States in any district other than that in which the decree of bankruptcy was made; if not, whether the amendatory act of 1874 (18 Stat. 178, sect. 3) validated such a suit already commenced.

The jurisdiction of the circuit courts in cases of bankruptcy, as conferred by the act of 1867, was twofold, — original and appellate; the latter being exercised in two different modes, — by petition of review, and by appeal or writ of error. But the enacting clauses which confer this jurisdiction make such direct

reference to the jurisdiction of the District Court, that it is necessary first to examine the latter jurisdiction. Of this there are two distinct classes: first, jurisdiction as a court of bankruptcy over the proceedings in bankruptcy initiated by the petition, and ending in the distribution of assets amongst the creditors, and the discharge or refusal of a discharge of the bankrupt; secondly, jurisdiction, as an ordinary court, of suits at law or in equity brought by or against the assignee in reference to alleged property of the bankrupt, or to claims alleged to be due from or to him. The language conferring this jurisdiction of the district courts is very broad and general. It is, that they shall have original jurisdiction in their respective districts in all matters and proceedings in bankruptcy. The various branches of this jurisdiction are afterwards specified; resulting, however, in the two general classes before mentioned. Were it not for the words, " in their respective districts," the jurisdiction would extend to matters of bankruptcy arising anywhere, without regard to locality. It is contended that these words confine it to cases arising in the district. But such is not the language. Their jurisdiction is confined to their respective districts, it is true; but it extends to all matters and proceedings in bankruptcy without limit. When the act says that they shall have jurisdiction in their respective districts, it means that the jurisdiction is to be exercised in their respective districts. Each court within its own district may exercise the powers conferred; but those powers extend to all matters of bankruptcy, without limitation. There are, it is true, limitations elsewhere in the act; but they affect only the matters to which they relate. Thus, by sect. 11, the petition in bankruptcy, and by consequence the proceedings thereon, must be addressed to the judge of the judicial district in which the debtor has resided, or carried on business, for the six months next preceding; and the District Court of that district, being entitled to and having acquired jurisdiction of the particular case, necessarily has such jurisdiction exclusive of all other district courts, so far as the proceedings in bankruptcy are concerned. But the exclusion of other district courts from jurisdiction over these proceedings does not prevent them from exercising jurisdiction in matters growing out of or connected

with that identical bankruptcy, so far as it does not trench upon or conflict with the jurisdiction of the court in which the case is pending. Proceedings ancillary to and in aid of the proceedings in bankruptcy may be necessary in other districts where the principal court cannot exercise jurisdiction; and it may be necessary for the assignee to institute suits in other districts for the recovery of assets of the bankrupt. That the courts of such other districts may exercise jurisdiction in such cases would seem to be the necessary result of the general jurisdiction conferred upon them, and is in harmony with the scope and design of the act. The State courts may undoubtedly be resorted to in cases of ordinary suits for the possession of property or the collection of debts; and it is not to be presumed that embarrassments would be encountered in those courts in the way of a prompt and fair administration of justice. But a uniform system of bankruptcy, national in its character, ought to be capable of execution in the national tribunals, without dependence upon those of the States in which it is possible that embarrassments might arise. The question has been quite fully and satisfactorily discussed by a member of this court in the first circuit, in the case of *Shearman* v. *Bingham*, 7 Bank. Reg. 490; and we concur in the opinion there expressed, that the several district courts have jurisdiction of suits brought by assignees appointed by other district courts in cases of bankruptcy.

Turning now to the jurisdiction of the circuit courts, we find it enacted in sect. 2 of the act of 1867, first, that the circuit courts, within and for the districts where the proceedings in bankruptcy are pending, shall have a general superintendence and jurisdiction of all cases and questions arising under the act. This is the revisory jurisdiction before referred to, exercised upon petition, or bill of review. Secondly, "said circuit courts shall also have concurrent jurisdiction with the district courts of the same district of all suits at law or in equity . . . brought by the assignee in bankruptcy against any person claiming an adverse interest, or by such person against such assignee, touching any property, or rights of property, of said bankrupt, transferable to or vested in such assignee." The act of 1874 changes the words "the same district" to "any dis-

trict," and adds to "person claiming an adverse interest" the words, "or owing any debt to such bankrupt." These changes make the jurisdiction of the Circuit Court for -the future clear and undoubted in cases like the present. But we are endeavoring to ascertain what jurisdiction was conferred by the act as originally passed. Reverting to the language used in the second clause above cited, it seems to be express and unqualified, that the Circuit Court shall have concurrent jurisdiction with the district courts of the same district. If, therefore, the District Court has jurisdiction of suits brought by an assignee appointed in another district, the Circuit Court of the same district has concurrent jurisdiction therewith. There is no escape from this conclusion, unless the phrase "the same district" is made to refer back to the beginning of the section, where mention is made of circuit courts within and for the districts where the proceedings in bankruptcy are pending. But the words, "the same district," used in the second clause, refer more naturally to the district in and for which the Circuit Court is held. The phrase, "the circuit courts shall have concurrent jurisdiction with the district courts of the same district," is, by itself, so clear and unambiguous, that a doubt could not have been raised as to its meaning, had it not been embraced in the same section with the other clause; and it is in accord with the general intent of the act to invest the Circuit Court with jurisdiction co-extensive with that of the District Court, except that it is only revisory in reference to the proceedings in bankruptcy.

If jurisdiction was conferred (as we have seen it was) on the various district courts to entertain suits brought by assignees appointed in other districts, there seems to be no reason why the same jurisdiction should not have been conferred on the various circuit courts, but, on the contrary, very cogent reasons why it should have been. Important cases would be very likely to arise, both in amount and in the questions involved, which it would be desirable to bring directly before the Circuit Court in order, if necessary, that an early adjudication might be had in the court of last resort.

As, therefore, the reason for such a provision, the general intent of the act, and the words themselves, all coincide, we do

not hesitate to say that the Circuit Court had jurisdiction of suits at law and in equity under the original act, co-extensive with the district courts, unless the qualifying words at the end of the clause, confining the jurisdiction to cases " touching any property, or rights of property, of said bankrupt, transferable to or vested in such assignee," may be deemed a restriction. In this case, however, the suit does concern and have reference to property transferable to the assignee. It is brought to compel the defendants to restore to the bankrupt's estate the value of property sold by them under a judgment alleged to have been confessed in fraud of the Bankrupt Act, and within four months of the commencement of proceedings in bankruptcy.

The amendatory act of 1874 has but little bearing upon the construction of the original act in the particular involved in this case. Different views had been expressed in relation to its meaning, and the jurisdiction of the courts under it. The amendatory act removed any ambiguity that may have existed, but did not thereby impress a more restricted meaning upon the language of the original act than was due to it by a fair judicial construction.

As to the merits of the case, it is almost too plain for argument. The general denial of fraud in the answer of the defendants is equivalent to nothing more than a denial of a conclusion of law. The allegation that they were led to believe, by the letters and representations of the bankrupt, that he was solvent at the time of the confession of judgment, and was worth $7,000 over and above his indebtedness, has but little force. If this were true, why did they immediately levy on and sell his whole stock of goods? That sale produced but little more than half the amount of their judgment. These unquestioned facts are sufficiently significant, and the evidence of the bankrupt makes the case a very strong one for the complainant. He had executions against him, and wrote to the defendants that he was in trouble, and requested them to come to his aid. They refused to do any thing unless he would confess judgment for the amount due them, including the amount of the prior judgments. They then immediately levied on all his goods, and sold him out. It was a clear case of preference by a debtor in insolvent circumstances, and known to be such by the judgment creditor.

The prior executions — one in favor of A. Coran & Co. for about $600, and the other in favor of Henry Bloss for about $900 — were probably valid. If the appellees satisfied those executions, or advanced the money for that purpose, the amount being embraced in their judgment, their own execution was good to that extent, and they should have credit therefor. As to the rest, they were answerable for the value of the goods levied on and sold.

*The decree of the Circuit Court must be reversed, and the record remitted, with directions to enter a decree in favor of the complainant below for the value of the goods of the bankrupt sold on the defendants' execution, with interest from the time that the same was demanded of them by the assignee, less the amount to which they may be justly entitled for advances to satisfy the said executions of A. Coran & Co. and Henry Bloss.*