## In re WOODBURY et al.

(District Court, D. North Dakota. January 19, 1900.)

1. BANKRUPTCY—JURISDICTION.
   Section 2 of the bankruptcy act of 1898 confers upon district courts full jurisdiction of actions at law and suits in equity to collect the estates of bankrupts, and this jurisdiction is in no way impaired by subdivision b of section 23.

2. SAME—SUITS BY TRUSTEES.
   Subdivision b of section 23 relates only to venue, and requires suits by the trustee to be brought in the district and division in which they should properly have been brought if prosecuted by the bankrupt.

3. SAME—JURISDICTION OF STATE COURTS.
   Congress has not the power to impose the execution of any part of the federal bankruptcy law upon the state courts.

(Syllabus by the Court.)

In Bankruptcy.

Freerks & Freerks, for bankrupt.

Corbet & Murphy, for trustee.

AMIDON, District Judge. A petition has been presented in this proceeding by the trustee in bankruptcy, asking permission to file a bill in equity in the United States district court to set aside certain alleged fraudulent conveyances made by the bankrupts. The application is opposed upon the ground that this court has no jurisdiction to entertain such a suit. The objection thus raised presents two questions: (1) What jurisdiction, if any, is granted by section 2 of the bankruptcy act of 1898 to the United States district courts in actions at law and suits in equity to collect the estate of the bankrupt? (2) If such jurisdiction is granted by that section, to what extent is

98 F.—53

it limited by the last clause of subdivision 7 thereof, and the other portions of the act to which reference is therein made?

We shall best ascertain the scope of the present act by examining the grant of jurisdiction to district courts in previous bankruptcy statutes, and the interpretation given to them by the federal courts. The provision on that subject in the act of 1841 is contained in section 6, and reads as follows:

"The district court in every district shall have jurisdiction in all matters and proceedings in bankruptcy arising under this act. And the jurisdiction hereby conferred on the district court shall extend to all acts, matters and things to be done under and in virtue of the bankruptcy, until the final distribution and settlement of the estate of the bankrupt, and the closing of the proceedings in bankruptcy."

It will be observed that in this language there is no specific grant of jurisdiction at common law or in equity, and no power expressly vested in the district courts to collect the estate of the bankrupt. Yet the federal courts held that such jurisdiction was in fact incidental to the powers conferred, and upon that ground sustained its plenary exercise by those courts. Mitchell v. Manufacturing Co., Fed. Cas. No. 9,662; Ex parte Christy, 3 How. 312, 11 L. Ed. 603. Owing, however, to the questions which had been raised in respect of the common-law and equity jurisdiction of the United States district courts under the act of 1841, that jurisdiction was made more specific and ample in the act of 1867, by expressly conferring upon those courts power to collect all the assets of the bankrupt. The provision on that subject reads as follows:

"The several district courts of the United States are hereby constituted courts of bankruptcy, and they shall have original jurisdiction in their respective districts in all matters and proceedings in bankruptcy. And the jurisdiction hereby conferred shall extend * * * to the collection of all the assets of the bankrupt."

It is noticeable, however, that no specific grant of jurisdiction at common law or in equity is contained in this act. Such jurisdiction was nevertheless sustained by the federal courts in the fullest measure, as necessarily implied from the powers expressly granted. Sherman v. Bingham, Fed. Cas. No. 12,762; Goodall v. Tuttle, Id. 5,533; Lathrop v. Drake, 91 U. S. 516, 23 L. Ed. 414. But even under this act much doubt arose as to whether jurisdiction could be exercised by the federal courts of any district other than that in which the original bankruptcy proceeding was instituted. The authorities bearing upon the question are fully discussed in the cases just cited. The language of the act of 1898 would seem to have been chosen with direct reference to this conflict of judicial opinion. All powers that were derived under earlier acts by implication are here bestowed in express terms. Every objection that had been raised in the course of previous litigation to the jurisdiction of federal courts of bankruptcy in such cases is answered in section 2 of the act of 1898 by a specific grant of power. Its material provisions are as follows:

"The district courts of the United States are hereby made courts of bankruptcy, and are hereby invested within their respective territorial limits with such jurisdiction at law and in equity as will enable them to exercise original jurisdiction in bankruptcy proceedings * * * to cause the estates of bank-

rupts to be collected, reduced to money and distributed, and determine controversies in relation thereto, except as herein otherwise provided."

Here, for the first time, jurisdiction "at law and in equity" is expressly vested in the United States district courts, and that jurisdiction is "such as will enable them to cause the estates of bankrupts to be collected and determine controversies in relation thereto." Such is the grant. The exception will be considered hereafter.

In the case of Mitchell v. McClure (D. C.) 91 Fed. 621, doubt is expressed as to whether any grant of plenary jurisdiction at common law or in equity is vested in district courts by the act of 1898. This doubt, however, seems to be based upon an erroneous view of the source of such jurisdiction under the act of 1867. The third clause in section 2 of that act provided:

"Said circuit courts shall also have concurrent jurisdiction with the district courts of the same district of all suits at law or in equity which may or shall be brought by the assignee in bankruptcy against any person claiming an adverse interest or by such person against such assignee, touching any property or rights of property of said bankrupt, or vested in such assignee."

The learned judge writing the opinion in that case considers this section to be the source of the common-law and equity jurisdiction of district courts under the act of 1867, and, inasmuch as no similar provision is contained in the act of 1898, he reaches the conclusion that the district courts have not plenary jurisdiction at common law or in equity under the latter act. The error here consists in deriving the jurisdiction of the district courts from the third clause of section 2, above quoted. The federal courts, in construing the act of 1867, uniformly held that full common-law and equity jurisdiction was vested in the district courts by section 1 of that act, instead of that part of section 2 which gives to circuit courts concurrent jurisdiction. The very grant of concurrent jurisdiction to the circuit courts assumes jurisdiction in the district courts elsewhere conferred. In the case of Lathrop v. Drake, 91 U. S. 516, 23 L. Ed. 414, the supreme court, speaking by Justice Bradley, describes the jurisdiction of the district courts and its source as follows:

"The jurisdiction of the circuit courts in cases of bankruptcy, as conferred by the act of 1867, was twofold,—original and appellate. But the enacting clauses which confer this jurisdiction make such direct reference to the jurisdiction of the district court that it is necessary first to examine the latter jurisdiction. Of this there are two distinct classes: First, jurisdiction as a court of bankruptcy over the proceedings in bankruptcy initiated by the petition, and ending in the distribution of assets amongst the creditors, and the discharge, or the refusal of a discharge, of the bankrupt; secondly, jurisdiction, as an ordinary court, of suits at law or in equity brought by or against the assignee in reference to alleged property of the bankrupt, or to claims alleged to be due from or to him. The language conferring this jurisdiction of the district courts is very broad and general. It is, that they shall have original jurisdiction in their respective districts in all matters and proceedings in bankruptcy. (Section 1.) The various branches of this jurisdiction are afterwards specified; resulting, however, in the two general classes before mentioned."

See, also, to same effect, Sherman v. Bingham, Fed. Cas. No. 12,762; Goodall v. Tuttle, Id. 5,533.

A comparison of the bankruptcy acts of 1841, 1867, and 1898 has shown a steady growth in the explicitness with which jurisdiction at

common law and in equity is granted to the United States district courts, and in no act has such jurisdiction been conferred in language both so comprehensive and specific as in the act of 1898. It remains to be considered whether congress, after having been at such pains to grant this ample jurisdiction at the beginning of the act, has in its later provisions wholly annulled its grant. I am of the opinion that the last clause of subdivision 7 of section 2, "except as herein otherwise provided," upon which the denial of jurisdiction is based, does in fact refer to subdivision "b" of section 23, though this is doubted in the learned opinion of Judge Adams in the case of In re Sievers (D. C.) 91 Fed. 366. That subdivision reads as follows:

"Suits by the trustee shall only be brought or prosecuted in the courts where the bankrupt, whose estate is being administered by such trustee, might have brought or prosecuted them if proceedings in bankruptcy had not been instituted, unless by consent of the proposed defendant."

Does this subdivision mean that district courts are without jurisdiction of suits at law and in equity brought by a trustee in bankruptcy, unless they would have such jurisdiction if the suits had been brought by the bankrupt? Such has been the uniform assumption of the cases which have denied jurisdiction to the district courts. But does not this prove too much? It is tantamount to saying that the district courts shall under no circumstances have jurisdiction; for, if we exclude the bankruptcy act, as ex hypothesi we must, those courts, with a few exceptions which are not material to the present subject, are not vested with jurisdiction of suits of a civil nature at common law or in equity brought by a private individual, and therefore could in no case exercise jurisdiction of a suit brought by the bankrupt in person. It results that, if those courts have no jurisdiction of suits prosecuted by a trustee unless they would have such jurisdiction if the suits were prosecuted by the bankrupt, they are wholly deprived of jurisdiction of suits by trustees, and subdivision "b" becomes simply a roundabout way of declaring that result; and, if this conclusion be adopted, the United States district courts are wholly without jurisdiction to cause the estates of bankrupts to be collected, for the only way in which that object can be accomplished is by suits instituted in the name of the trustee. Let us then bring together the ample grant of jurisdiction made by section 2, and the exception to such grant embodied in subdivision "b," as thus construed. If the interpretation contended for be adopted, the bankruptcy act should read:

"District courts are hereby invested with jurisdiction at law and in equity to cause the estates of bankrupts to be collected and determine controversies in relation thereto, except that such courts shall never exercise any such jurisdiction."

Either the construction which denies jurisdiction is erroneous, or congress has been guilty of a manifest absurdity.

There are many other reasons why the construction which denies jurisdiction cannot be adopted:

First. It violates the cardinal principle of statutory interpretation, that an exception ought not to be so construed as to wholly destroy the grant to which it is attached. Dollar Sav. Bank v. U. S., 19 Wall.

227, 22 L. Ed. 80; Ryan v. Carter, 93 U. S. 78, 23 L. Ed. 807; U. S. v. Dickson, 15 Pet. 141, 10 L. Ed. 689.

Second. It would devolve entirely upon the state courts the duty of administering the federal bankrupt law, in so far as it relates to the collection of the estates of the bankrupts. This congress had not the power to do, as had been pointed out by the decisions of the federal courts in construing the previous bankruptcy acts,—a circumstance which furnishes strong reason for believing that congress did not violate the rule in framing the present statute. While state courts may exercise a concurrent jurisdiction with the federal courts in enforcing rights and duties created by federal law, it is a purely discretionary jurisdiction upon their part, which may at any time be wholly renounced or incumbered with onerous conditions. Sherman v. Bingham, Fed. Cas. No. 12,762; Goodall v. Tuttle, Id. 5,533; Martin v. Hunter's Lessee, 1 Wheat. 304, 330, 4 L. Ed. 97; Robertson v. Baldwin, 165 U. S. 275, 17 Sup. Ct. 326, 41 L. Ed. 715.

Third. If not indispensable to a uniform system of bankruptcy throughout the entire country, it would certainly be highly conducive to such a system that the federal courts should be vested with full jurisdiction, for the purpose of securing the highest degree of uniformity in the interpretation and administration of the law. This has been a controlling consideration in construing all previous bankruptcy acts, and was, no doubt, present to the mind of congress in framing the statute of 1898. In speaking of this subject in the case of Ex parte Christy, 3 How. 292, 11 L. Ed. 603, Justice Story said:

"If we are told that resort may be had to the state courts for redress, one answer is that in some of the states no adequate jurisdiction exists in the state courts. But a stronger and more conclusive answer is that congress did not intend to trust the working of the bankrupt system solely to the state courts of twenty-six states, which were independent of any control by the general government, and were under no obligations to carry the system into effect. The judicial power of the United States is by the constitution competent for all such purposes: and congress by the act intended to secure the complete administration of the whole system in its own courts, as it constitutionally might do. The truth is that in no other way could the bankrupt system be put into operation without interminable doubts, controversies, embarrassments, and difficulties, or in such a way as to achieve the true end and design thereof."

See, also, on the same subject, Mitchell v. Manufacturing Co., Fed. Cas. No. 9,662; McLean v. Bank, Id. 8,885; Sherman v. Bingham, Id. 12,762; Goodall v. Tuttle, Id. 5,533; Lathrop v. Drake, 91 U. S. 516, 518, 23 L. Ed. 414. In the last case the supreme court, speaking of the act of 1867, says:

"But a uniform system of bankruptcy, national in its character, ought to be capable of execution in the national tribunals, without dependence on those of the states in which it is possible that embarrassments might arise.

Fourth. The construction of subdivision "b" of section 23, which denies jurisdiction to the district courts, renders subdivision "a" of that section wholly nugatory; for it will be noticed that subdivision "b" covers all courts. Therefore, if it excludes jurisdiction of the district courts in all cases which could not have been prosecuted in those courts by the bankrupt, it would be equally effectual to exclude the jurisdiction of the circuit courts under the same circumstances.

But congress has placed precisely that limitation upon the circuit courts in subdivision "a." It must therefore follow that subdivision "b" does not relate to the subject of jurisdiction, or else subdivision "a" is wholly superfluous.

These are some of the reasons why the construction of the bankruptcy act of 1898 which denies jurisdiction to the district courts in suits at law and in equity brought by the trustee to collect the estate of the bankrupt ought not to be accepted. Many others are presented in the authorities which have already been cited. I refer especially to the elaborate opinions in Goodall v. Tuttle, Fed. Cas. No. 5,533; Sherman v. Bingham, Id. 12,762.

We will now endeavor to find a construction of the bankruptcy act which will harmonize its different provisions. The solution of the whole difficulty is indicated by the last phrase of subdivision "b" of section 23,—"unless by consent of the proposed defendant." Those courts which have denied jurisdiction have entirely passed over this clause. It certainly renders impossible their construction of the balance of the subdivision. If the limitation which the statute imposes may be set aside by consent of the defendant, then it must relate to a matter wholly subject to his discretion. But, according to the interpretation of those courts that deny jurisdiction, it relates to the jurisdiction of the subject-matter: It is elementary, however, that jurisdiction of courts as respects the subject-matter cannot be left to the discretion of parties. That jurisdiction must be created and defined by law, and, if it does not exist, the action of the court is a nullity, notwithstanding the most solemn stipulation of the litigants. My conclusion, therefore, is that subdivision "b" does not relate to the jurisdiction of courts, but to the venue of suits. Under the federal statutes in force at the time the bankrupt law was passed, a defendant, with certain exceptions not now important, could not be sued in a district of which he was not an inhabitant; and, in case the district was divided into divisions, he could not be sued except in the division of which he was a resident. The object of subdivision "b" was to apply this restriction specifically to suits brought by trustees under the bankruptcy act. But that act furnishes still more direct cause for the limitation. Under section 45, the trustee need not be a resident or citizen of the district in which the proceeding is pending; he need only maintain an office in the district. It would frequently occur that a majority of the creditors, especially in the case of insolvent merchants, would be residents of a district other than that of the bankrupt. Take, for example, the states of Wisconsin, Iowa, Indiana, and Michigan. It might easily happen that a majority of the creditors of a bankrupt in either of these states would consist of the wholesale dealers at Chicago; and such creditors might naturally prefer to place a trustee from their own community, with whom they were personally acquainted, in control of the bankrupt estate. If this should occur, it would be possible for such a trustee to sue any debtor of the estate from either of the states named in the district of Illinois, if he should be found there; for it is well established that, when one sues in a representative capacity, it is his own, and not the residence or citizenship of the per-

son represented, that fixes the venue and jurisdiction of federal courts. Coal Co. v. Blatchford, 11 Wall. 172, 20 L. Ed. 179. It was this possible hardship that congress had in mind when it adopted the language contained in subdivision "b." But these statutes forbidding the suing of a defendant in a district of which he is not an inhabitant, or a division of which he is not a resident, create only a personal privilege, which the defendant may waive, and which he does waive unless he makes timely objection. Improvement Co. v. Gibney, 160 U. S. 217, 16 Sup. Ct. 272, 40 L. Ed. 401. It was to give force to this rule that the last phrase of subdivision "b" was employed, —"unless by consent of the proposed defendant." In the light of these considerations, the words in subdivision "b," "in the courts where," should be given their most obvious sense, as relating to venue, and not be construed as meaning "in the courts which would possess jurisdiction." Giving to subdivision "b" this construction brings all the provisions of the bankruptcy act on the subject into harmony, and also harmonizes the act of 1898 with previous statutes of the same character, as they have been interpreted by the highest federal courts. Permission will therefore be granted to file the bill.