WALL et al. v. COX.

(Circuit Court of Appeals, Fourth Circuit. May 1, 1900.)

No. 355.

1. BANKRUPTCY—JURISDICTION—SUITS BY TRUSTEE.

Under Bankr. Act 1898, § 2, granting jurisdiction in bankruptcy to the district courts of the United States as courts of bankruptcy, such a court has jurisdiction of a suit in equity by a trustee in bankruptcy to set aside a transfer or conveyance of property previously made by the bankrupt to the defendant, and alleged to have been fraudulent as to creditors.

2. SAME—FORM OF ACTION—BILL IN EQUITY.

A trustee in bankruptcy, seeking to set aside and annul a bill of sale and transfer of property previously made by the bankrupt, and alleged to have been fraudulent under the bankruptcy law, and as against creditors, may appropriately proceed by bill in equity, and will not be required to seek his remedy at law.

On petition to superintend and revise, in matter of law, proceedings of the district court of the United States for the Western district of North Carolina in the matter of W. H. Gilbert, trading as Winston Hardware Company and as Gilbert Hardware Company, bankrupt, in bankruptcy. (See 99 Fed. 546.)

C. B. Watson and Clement Manley, for petitioners.

Louis M. Swink and Lindsay Patterson (A. H. Eller, on the brief), for respondents.

Before GOFF and SIMONTON, Circuit Judges, and WADDILL, District Judge.

WADDILL, District Judge. This cause is now before the court upon an application to "superintend and revise, in matter of law," a certain decree of the United States district court for the Western district of North Carolina, and the real question presented is whether said court has jurisdiction in equity to entertain a bill to set aside and annul a bill of sale for a stock of goods made by the bankrupt, W. H. Gilbert, to the petitioners here, three days before the petition of involuntary bankruptcy was filed against him by his creditors, and on account of which bill of sale he was adjudged a bankrupt. The trustee for the bankrupt attacked said transfer because fraudulent, and made to hinder, delay, and defraud the bankrupt's creditors, and averred that the petitioners here entered into collusion with the bankrupt to defraud his creditors, and insisted that the goods were still the property of the bankrupt, and the title in him as trustee. Said petitioners, on the other hand, claim to be purchasers in good faith, and for a present fair consideration, and raise specially the question of jurisdiction aforesaid. The question of the jurisdiction of the United States district court over controversies between third parties, or adverse claimants to the bankrupt, and the bankrupt's trustee, is one that gave rise to much controversy under former bankrupt laws, and the present act has afforded fresh opportunity for a revival and renewal of many of the objections urged against previous legislation on the subject of the federal courts' jurisdiction. Indeed, under the present act, the claim of limitation on the jurisdiction of the United States district court goes to the extent of excluding that tribunal from all jurisdiction in cases of the class now under consideration; the contention being, in effect, that the jurisdiction conferred upon that court under the existing act is administrative, merely, in its character, and is limited to entertaining petitions of bankrupts, making adjudications in such cases, distributing the estates brought in, and granting discharges; and that as to all matters affecting the bankrupt's estate the bringing in and collection of assets, the determination of the rights of parties of the character involved in this cause, that recourse can alone

be had to the state courts, unless it happens that by reason of the amount involved, and the citizenship of the parties, jurisdiction would be in the United States circuit court. And the contention as to where the bankrupt's trustee can sue goes even further, namely, that he is confined entirely to the state court, unless suit be allowed in the United States circuit court with the defendant's consent. The far-reaching effect of these conflicting claims will be readily appreciated. One makes the state courts practically the medium through which the law is to be administered; the other, the federal courts. If the district courts have only the jurisdiction conceded to them, then they become, so far as the bankrupt law is concerned, unimportant tribunals; their chief office as to the bankrupt's estate being to distribute ratably among creditors such estate as the bankrupt sees proper to bring in, or such as other courts may from time to time, and indefinitely, decide should be distributed. In the consideration of so important a question, in the administration of a national bankrupt law, it is fortunate that we are aided by the interpretation given by the highest court in the land to previous acts, having under review the same positions taken here; and while, of course, these decisions are not controlling in the interpretation of the present act, they shed much light on the question, and to them, as well as to the fact that the subject under consideration is that of a national bankruptcy act, supposed to be uniform in its character, great consideration should be given. In the case of Lathrop v. Drake, 91 U. S. 516, 23 L. Ed. 414, Mr. Justice Bradley, in discussing the jurisdiction of the district court under the act of 1867, said:

"Of this there are two distinct classes: First, jurisdiction as a court of bankruptcy over the proceedings in bankruptcy initiated by the petition, and ending in the distribution of assets amongst the creditors, and the discharge, or the refusal of a discharge, of the bankrupt; secondly, jurisdiction, as an ordinary court, of suits at law or in equity brought by or against the assignee in reference to alleged property of the bankrupt, or to claims alleged to be due from or to him. The language conferring this jurisdiction of the district courts is very broad and general. It is that they shall have original jurisdiction in their respective districts in all matters and proceedings in bankruptcy. The various branches of this jurisdiction are afterwards specified, resulting, however, in the two general classes before mentioned."

If the two distinct classes of jurisdiction thus mentioned by Mr. Justice Bradley are kept in view, it will aid materially in the interpretation of the present act, for precisely the same classes of jurisdiction in terms are enumerated in the present act. Indeed, the act of 1898 goes further than either the act of 1841 or 1867 in describing the second class, and specifically provides that the district courts shall be invested with such jurisdiction "at law and in equity as will enable them to exercise original jurisdiction in bankruptcy proceedings." Just why jurisdiction "at law and in equity" should have been bestowed if only the purpose was to create the mere administrative tribunal claimed, cannot well be conceived. The act in this regard is more comprehensive than the previous acts; those of 1841 and 1867 not containing the words "at law and in equity" in terms. The grant of jurisdiction to the district court under the act of 1898 is found in section 2 of the act, and is in these words: "Are hereby

made courts of bankruptcy, and are hereby invested within their respective territorial limits as now established or as they may be hereafter changed, with such jurisdiction at law and in equity as will enable them to exercise original jurisdiction in bankruptcy proceedings, in vacation, in chambers, and during their respective terms, as they are now or may be hereafter held;" and then follows the jurisdiction at law and in equity mentioned and defined specifically in the subsections, to wit: To (1) "adjudge persons bankrupt who have had their principal place of business," etc.; (2) "allow and disallow claims," etc.; (3) "appoint receivers or marshals, upon the application of parties in interest, in case the court shall find it absolutely necessary for the preservation of estates, to take charge of the property of bankrupts after the filing of the petition, and until it is dismissed or the trustees qualified"; (5) "authorize the business of bankrupts to be conducted for limited periods by receivers," etc.; (6) "bring in and substitute additional persons or parties in proceedings in bankruptcy when necessary for the complete determination of the matter in controversy"; (7) "cause estate of bankrupts to be collected, reduced to money and distributed, and determine controversies in relation thereto, except as herein otherwise provided"; (15) "make such orders, issue such process, and enter such judgments, in addition to those specifically provided for, as may be necessary for the enforcement of the provisions of this act." Then, continuing the specific enumerations (19 in all), those specially quoted above relating particularly to the jurisdiction as a court of law and equity, and the others to the jurisdiction, as a court of bankruptcy, over bankruptcy proceeding, concludes: "Nothing in this section shall be construed to deprive a court of bankruptcy of any power it would possess were certain specific powers not herein enumerated." This proviso and conclusion of the section shows plainly that it was not the purpose of congress, in enumerating the 19 specific grounds of jurisdiction, to limit or take away the jurisdiction conferred by the general grant of power. The language, "such jurisdiction at law and in equity as will enable them to exercise original jurisdiction in bankruptcy proceedings, in vacation, in chambers, and during their respective terms as they are now or may be hereafter held," would clearly confer upon the United States district courts jurisdiction to hear and determine cases of the character now under consideration. To clothe the court with power to entertain a bankruptcy petition, and discharge and relieve the bankrupt from the payment of his debts, and not confer upon it the power to make the person thus receiving an acquittance and release, and those fraudulently colluding with him, bring in and give up to the creditors interested the bankrupt's property which of right belongs to them, would be a strange anomaly; and unless there is something in the jurisprudence of the law of bankruptcy, and the jurisdiction conferred upon courts of bankruptcy, so peculiarly engaged in the administration of insolvent estates and the detection and prevention of fraud, and singularly combining in their legal nature and operation the elements and powers of courts of admiralty and courts of equity, it ought not to be accepted and adopted. To say that the United States district

court, sitting as a court of bankruptcy, with all the analogous powers and jurisdiction of a court of equity, and with jurisdiction at law and equity specially conferred upon it as ancillary and supplementary to its inherent power, in an involuntary bankruptcy proceeding can only afford the creditors the relief of making certain that the debtor is a bankrupt, and has committed acts of bankruptcy, and that, where he has fraudulently transferred his estate, although it be the act of bankruptcy set up, as in this case, that as against the alleged fraudulent transferee no relief can be afforded, but the creditors must inaugurate in the state courts wherever such transferee happens to reside litigation to secure any substantial relief, would be to impose upon them a burden that would be unreasonable in the extreme, and in many cases one that would be entirely ineffective; and, besides, it would bring about a result manifestly not contemplated by those enacting the law, the predominating feature of all bankruptcy legislation being simplicity and expedition in the collection and administration of bankrupts' estates. Bankrupts wishing to defraud their creditors, and those colluding with them, would be a bungling set of conspirators who could not elude and evade a law so handicapped by the machinery necessary to put it in motion, and the result would be that the estate, pending the many stages of litigation through which creditors would have to pass; and, indeed, in anticipation of the necessity of the various requirements, would be readily placed beyond their reach. The claim of limitation upon the district court's jurisdiction is based upon the concluding words "except as herein otherwise provided" in subdivision 7, § 2. The subdivision reads:

"(7) Cause estates of bankrupts to be collected, reduced to money and distributed, and determine controversies in relation thereto, except as herein otherwise provided."

Those making this contention apparently overlook the concluding paragraph of section 2 of the act, which provides that the particular specifications named shall not be construed to deprive the court of bankruptcy of any jurisdiction conferred by the general grant of power. The bankrupt act of 1841 was less comprehensive as to the district court's jurisdiction than is the present act, for no specific power to collect debts was given, nor were the courts granted in terms common law and equity jurisdiction. Section 6 of the act is as follows:

"The district court in every district shall have jurisdiction in all matters and proceedings in bankruptcy arising under this act. And the jurisdiction hereby conferred on the district court shall extend to all acts, matters and things to be done under and in virtue of the bankruptcy, until the final distribution and settlement of the estate of the bankrupt and the closing of the proceedings in bankruptcy."

The act, however, was held to confer jurisdiction upon the court, the same being declared to be incidental to the powers given. Mitchell v. Manufacturing Co., Fed. Cas. No. 9,662; Ex parte Christy, 3 How. 312, 11 L. Ed. 603. Under the bankrupt act of 1867, the provision as to the court's jurisdiction was as follows:

"The several district courts of the United States are hereby constituted courts of bankruptcy, and they shall have original jurisdiction in their respective

districts in all matters and proceedings in bankruptcy. And the jurisdiction hereby conferred shall extend  *  *  *  to the collection of all the assets of the bankrupt."

Under this clause the courts held that the jurisdiction at law and in equity was granted, being necessarily implied from the powers expressly given.    Lathrop v. Drake, 91 U. S. 516, 23 L. Ed. 414; Goodall v. Tuttle, Fed. Cas. No. 5,533; Sherman v. Bingham, Id. 12,762.   Those disputing the district courts' jurisdiction insist that the qualifying words, "except as herein otherwise provided," of subdivision 7, § 2, refer to section 23, subds. "a" and "b," and that the effect of the qualification is to take from the federal district court jurisdiction in all cases of the character now under consideration, or where the rights of third persons in possession of and adverse claimants to the bankrupt or his trustee are concerned.   We need not specially consider subdivision "a," § 23, as it does not immediately concern the question presented in this case.   In passing, it may be said that abundant scope can be given that section without in the slightest infringing on the general chart of jurisdiction laid out for the United States district court, and in entire harmony with that court's jurisdiction.  First. One of the purposes of said subdivision was to make clear that the full and sweeping jurisdiction given the district court in bankruptcy matters should not operate to take away from the circuit court its proper jurisdiction in cases arising out of bankruptcy proceedings, where the amount and citizenship of the parties entitled them to go into a federal circuit court. Second. Another, to prescribe that the trustee of a bankrupt's estate should not, merely because of his being an officer of a federal court, have the right to go into the circuit court, regardless of the amount involved, or of the citizenship of the parties.   Subdivision 23b is as follows:

"(b) Suits by the trustee shall only be brought or prosecuted in the courts where the bankrupt, whose estate is being administered by such trustee, might have brought or prosecuted them if proceedings in bankruptcy had not been instituted; unless by consent of the proposed defendant."

The construction placed upon this clause has not been harmonious; indeed, quite a contrariety of views has been judicially expressed as to its true intent and meaning.   Some insist that it refers not to the jurisdiction of the court at all, but to the venue of suits, and requires suits to be instituted in the district and subdivision in which they could have been brought if prosecuted by the bankrupt; others, that it is meant as a limitation on the jurisdiction of the circuit, and not the district, court; others, that it confines jurisdiction to the state court, except with the consent of the defendant; and others, who earnestly insist that it places all jurisdictions in the state courts.   Which of either of these conflicting constructions may be correct, we need not stop to determine, as, in our view, the clause in question clearly does not, assuming the exception in subdivision 7, § 2, specially to refer to it, take away from the United States district court jurisdiction to entertain suits of the character under consideration, or causes affecting the bankrupt's estate, merely because the rights of third persons, or parties claiming or having

an interest adverse to the bankrupt or his trustee, may be involved. Those making the claim are forced to deny the jurisdiction of the United States district court altogether. Their theory is inconsistent with concurrent jurisdiction in the two courts, and, if they are right, the result inevitably follows that the state court has exclusive jurisdiction of this class of suits; and, as to suits by the bankrupt's trustee, it even denies him the right of admission to the United States circuit as well as the district court, although by subdivision "e," § 70, he is specially authorized to avoid any transfer of the bankrupt's estate that a creditor of the bankrupt might have avoided, or to recover any property, or its value, so transferred, from the person to whom it was transferred, and such creditor could have proceeded in the United States circuit court in a proper case for its jurisdiction. The exception contained in subdivision 7, § 2, was manifestly not intended to have the effect claimed for it, and it cannot be given that interpretation without violating well-understood canons of construction. That exceptions should be strictly construed is elementary, and if an interpretation of an act will give effect to its several provisions, as against one that will only partially accomplish this purpose, can be arrived at, it should always be adopted. An exception should not be so construed as to wholly destroy the grant of which it forms a part. U. S. v. Dickson, 15 Pet. 141, 165, 10 L. Ed. 689; Dollar Sav. Bank v. U. S., 19 Wall. 227, 22 L. Ed. 80; Ryan v. Carter, 93 U. S. 78, 23 L. Ed. 807.

The view presented that section 23b has reference to the venue, rather than to the jurisdiction, of the court, has considerable force in it, as it should not be presumed that congress meant to legislate upon the theory that the consent of a defendant could give jurisdiction to a court, and consent is entirely consistent with the idea of venue. It is allowable for a defendant to appear and submit to the jurisdiction of a court otherwise possessed of jurisdiction, and in which he could not be sued without his voluntary appearance, but his consent would avail nothing if the court was not clothed with jurisdiction of suits of the character involved; and full scope can be given to the section by its application to cases of the class that the bankrupt himself might have brought,—i. e. to the collection of debts due the bankrupt. To require such suits to be brought at the debtor's home in the state court is, perhaps, what congress intended, unless, with the consent of the defendant, the suit should be instituted in the United States district court, a tribunal also having jurisdiction of the parties and over the subject-matter. To allow this section to qualify the whole bankrupt act, and at the same time make it applicable as well to suits that the trustee brings, as the representative of the creditors, as to those of the character that the bankrupt himself could not have brought, would be to clearly violate the plain letter and manifest spirit of the act. Another view shows conclusively that it was not intended to take away from the bankrupt court jurisdiction of the class of cases now under consideration, namely, which involve dealings with the bankrupt's estate in contravention of the rights of his creditors, the bankrupt could not have brought such suits. This is a suit by the trustee in

bankruptcy to set aside and annul an alleged fraudulent bill of sale and transfer of property made by the bankrupt on the eve of his going into bankruptcy, and to have the property of the bankrupt surrendered to the trustee cleared of such cloud on his title. The trustee is vested, as of the date of adjudication, by operation of law, with the title of the bankrupt, among other things, "to all property transferred by him in fraud of his creditors, as well as to all property which, prior to the filing of the petition, he could, by any means, have transferred, or which might have been levied upon and sold by judicial process against him." Bankr. Act, § 70. The word "transfer" includes the sale and every other different mode of disposition of or parting with property, absolutely or conditionally; as by payment, pledge, mortgage, gift, or security. Id. § 1, cl. 25. The title to the property alleged to have been fraudulently conveyed, by the express terms of the act, as of the date of adjudication, vests in the bankrupt's trustee upon the assumption of the transfer being void, and the bankrupt court has, as authorized by the act, appointed a receiver to seize and take charge of the property involved, and now, in fact, holds the same. Can it be seriously claimed that in such a case, with an officer of the court before it, with property thus vested in him, and the same seized by the court and brought in for the benefit of creditors, the court is powerless to afford relief either to its own officer, or to the creditors of the bankrupt, because the rights of an alleged fraudulent transferee are involved, and that on that account the hands of the bankrupt court should be stayed until the question of the transferee's rights can be determined in a state court? This cannot be the law. The property is in custodia legis, and all persons having interest in it or claiming title to it have necessarily to come into the court having it in charge. Any other course would be unheard of. It would be to except the United States district court from the otherwise universal and fundamental rules, principles, and practice of courts of justice in respect to property lawfully under their charge.

Another view of the act would seem to be equally conclusive of the question under consideration. The whole act should be taken into account, and not a single or isolated section. "It is an established rule in the exposition of statutes, that the intention of the lawgiver is to be deduced from a view of the whole and every part of a statute, taken and compared together. * * * And the reason and intention of the lawgiver will control the strict letter of the law when the latter would lead to a palpable injustice, contradiction, and absurdity." 1 Kent, marg. p. 462. "The object of the rule is to ascertain and carry into effect the intention, and it is to be inferred that a code of statutes relating to one subject was governed by one spirit and policy, and was intended to be consistent and harmonious in its several parts and provisions. Upon the same principle, whenever a power is given by a statute, everything necessary to the making of it effectual or requisite to attain the end is implied." Id. 464. When the fact is taken into account that the question presented is whether congress meant, in dealing with a subject confided by the constitution to the federal government, and

affecting the people of the entire country, and especially charged to be uniform in character, to leave the important features of jurisdiction, under the enactment, to the exclusive control of the courts of 44 different states, or to the federal courts, where one general and harmonious rule of interpretation could be adopted and followed, there ought to be but little difficulty in reaching a correct conclusion. The state courts, as to many matters in which exclusive jurisdiction is not conferred on the federal courts, have a concurrent jurisdiction with the courts of bankruptcy, but such jurisdiction is not conferred by act of congress. It exists in those courts by reason of their general jurisdiction, and independent of any enactment by congress. Indeed, congress is without the power to give jurisdiction to the state courts to administer the bankrupt law, so far as the collection of the estates of bankrupts is concerned; and while such state courts, in enforcing the rights and duties under the federal law, exercise the concurrent jurisdiction with federal courts, it is entirely a discretionary jurisdiction on their part, and one they may wholly renounce or conditionally exercise whenever they wish to do so. Sherman v. Bingham, Fed. Cas. No. 12,762; Goodall v. Tuttle, Id. 5,533; Martin v. Hunter's Lessee, 1 Wheat. 304, 339, 4 L. Ed. 97; Robertson v. Baldwin, 165 U. S. 275, 17 Sup. Ct. 326, 41 L. Ed. 715. Every consideration accentuates the desirability, if not the necessity, of the federal courts having at least a concurrent jurisdiction in the administration of a national bankruptcy act. It cannot be presumed that congress was not fully alive to the importance of this question, particularly as it was one upon which so much stress was laid under the former acts. In discussing this question in Ex parte Christy, 3 How. 292, 320, 321, 11 L. Ed. 616, Mr. Justice Story said:

"If we are told that resort may be had to the state courts for redress, one answer is that in some of the states no adequate jurisdiction exists in the state courts. * * * But a stronger and more conclusive answer is that congress did not intend to trust the working of the bankrupt system solely to the state courts of twenty-six states, which were independent of any control by the general government, and were under no obligations to carry the system into effect. The judicial power of the United States is, by the constitution, competent for all such purposes; and congress, by the act, intended, to secure the complete administration of the whole system in its own courts, as it constitutionally might do. * * * The truth is that in no way could the bankrupt system be put into operation without interminable doubts, controversies, embarrassments, and difficulties, or in such a manner as to achieve the true end and design thereof."

And in Lathrop v. Drake, 91 U. S. 516, 518, 23 L. Ed. 415, Mr. Justice Bradley said:

"The state courts may undoubtedly be resorted to in cases of ordinary suits for the possession of property or the collection of debts, and it is not to be presumed that embarrassments would be encountered in these courts in the way of a fair and prompt administration of justice. But a uniform system of bankruptcy, national in its character, ought to be capable of execution in the national tribunals, without dependence upon those of the states, in which it is possible that embarrassments might arise."

The precise question here presented under the act of 1898, as far as we have been able to ascertain, has never been passed upon by the circuit court of appeals of any of the circuits, though on kindred questions, and in some instances ones almost conclusive of the pres-

ent controversy, several of these courts have passed, namely: In the Second circuit, in Re Gutwillig, 34 C. C. A. 377, 92 Fed. 337; in the Eighth circuit, in Davis v. Bohle, 34 C. C. A. 372, 92 Fed. 325; in the Sixth circuit, in Carriage Co. v. Stengel, 37 C. C. A. 210, 95 Fed. 637; in the Ninth circuit, in Re Francis-Valentine Co., 36 C. C. A. 499, 94 Fed. 793; in the Fifth circuit, in Re Abraham, 35 C. C. A. 592, 93 Fed. 767; and in this circuit, in Bear & Co. v. Chase, 99 Fed. 920. The decisions in all of the circuits, with the exception of the Fifth, have been favorable to the views herein expressed, while those of that court tend rather to support the contrary view. The decisions of the district courts have likewise been favorable to the views herein expressed. Only the cases in those courts bearing particularly on the point in issue here, and in conformity herewith, will be given. In re Sievers (D. C.) 91 Fed. 366; Carter v. Hobbs (D. C.) 92 Fed. 39; In re Smith, Id. 135; Robinson v. White (D. C.) 97 Fed. 33; In re Newberry, Id. 24; Murray v. Beal, Id. 567; In re Woodbury (D. C.) 98 Fed. 833; In re Hammond, Id. 845; Pepperdine v. Headley, Id. 863. The following text writers, in their several treatises upon the present act, will be found to support the jurisdiction of the district court herein laid down: Loveland, Bankr. pp. 67–73, 409; Black, Bankr. pp. 123, 124; Lowell, Bankr. pp. 411, 412; Coll. Bankr. pp. 14–19; Smith, Eq. Rem. of Cred. §§ 407, 418.

The petitioners earnestly insist that, if the United States district court has jurisdiction to entertain a suit of the character under consideration, the action should be by appropriate proceedings at law, and not by bill in equity. That courts of equity are clothed with full power and authority to entertain suits involving questions of fraud in the conveyance and transfer of property, and the annulling and cancellation of such transfers, is too well and firmly established in the jurisprudence of the country to admit of serious question at this late day. "It is not enough that there is a remedy at law; it must be plainly adequate, or, in other words, as practical and efficient to the ends of justice, and its prompt administration, as the remedy in equity." Boyce v. Grundy, 3 Pet. 213, 7 L. Ed. 655. In Clements v. Moore, 6 Wall. 299, 18 L. Ed. 786, the same being a creditors' bill in the district court to set aside a fraudulent transfer of a stock of goods, the court said that equity is the appropriate remedy, being more flexible and tolerant, and capable of administering justice to fit the particular case, than could be done under the rules of law. "It is objected that a court of equity has no jurisdiction of the case, because the law affords a complete remedy in damages. This objection is groundless. Equity has always had jurisdiction of fraud, misrepresentation, and concealment; and it does not depend on discovery." Jones v. Bolles, 9 Wall. 364, 369, 19 L. Ed. 734. "Jurisdiction in equity attaches unless the legal remedy, both in respect to the final relief and the mode of obtaining it, is as efficient as the remedy which equity would confer under the same circumstances." Mr. Chief Justice Fuller, in Kilbourn v. Sunderland, 130 U. S. 505, 515, 9 Sup. Ct. 594, 32 L. Ed. 1005.

For the reasons given, the decision of the lower court is affirmed, at the costs of the petitioners.