### In re HURST.

#### (District Court, N. D. West Virginia.)

BANKRUPTCY (§ 311*)—FRAUDULENT CONVEYANCES—PARTICIPATION IN PROCEEDS.

Under Bankr. Act July 1, 1898, c. 541, 30 Stat. 544 (U. S. Comp. St. 1901, p. 3418), invalidating preferences made within four months of the filing of a bankruptcy petition, and giving the trustee a right to sue to set aside fraudulent transfers for the benefit of existing creditors, a grantee guilty of fraud in taking and concealing a conveyance until a few days before the bankruptcy of the grantor, executed in consideration of a specified sum, used by the grantee to discharge a liability of the grantor for which the grantee was surety, may, on the setting aside of the conveyance as fraudulent, participate in the proceeds of a sale of the property as to a debt not involved in the fraudulent conveyance and incurred before its execution.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 497–500; Dec. Dig. § 311.*]

In the matter of the bankruptcy of J. Garland Hurst. On petition by the executors of one Tearney, deceased, to revise the decision of the referee. Ruling of referee reversed.

Forest W. Brown and R. T. Barton, for Tearney's executors.
James M. Mason, Jr., for trustees.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

DAYTON, District Judge. Edward Tearney was the father-in-law of Hurst, the bankrupt. It is undisputed that Hurst, for borrowed money and security debts paid, owed Tearney (now deceased) a sum in excess of $18,000; that after incurring this indebtedness Hurst, on December 4, 1896, by two deeds conveyed to Tearney his farm and his house and lot in Harper's Ferry for $14,000, which sum was paid by Tearney to the state in discharge of Hurst's liability as sheriff, for which liability Tearney was bound as surety on his official bond; that Tearney did not put these two deeds upon record, but allowed Hurst to remain in possession of the properties, represent them to be his own, have them taxed in his (Hurst's) name, pay such taxes, take out insurance upon the buildings in his own name, and exercise other acts of ownership thereover for a period of nearly 6 years, until he (Hurst) had incurred large indebtedness, Tearney had died, and his executors were called upon to pay another security debt for Hurst, when, on September 12, 1902, these deeds were filed for record by such executors. Hurst was adjudged a voluntary bankrupt 11 days thereafter. By order entered in these bankruptcy proceedings the trustees were authorized and directed to institute suit to set aside these deeds as fraudulent. Such suit was instituted in the Circuit Court of Jefferson county, and, upon appeal taken, the Supreme Court of Appeals of the state (62 W. Va. 84, 57 S. E. 263) held these deeds to be fraudulent and directed the farm and the house and lot to be sold and the proceeds to be paid over to the trustees in bankruptcy. This was done. The Tearney original $18,000 debt was proven in the bankruptcy proceeding, and dividends aggregating over $4,000 were paid to the executors thereon. The trustees in bankruptcy have filed their petition, setting forth the facts, and praying that the executors be required to repay to them, for the benefit of Hurst's other creditors, the dividends alleged to have been paid out of the proceeds of sale of the farm and house and lot, because Tearney was the fraudulent grantee thereof of Hurst, the bankrupt. This relief, as prayed for, has been granted by the referee, and this petition has been filed by Tearney's executors to review his action.

The case has been ably argued orally and in briefs filed, and presents a new and novel question, which may be stated thus: Is Tearney's estate, by reason of his fraudulent conduct in taking and concealing the conveyances from Hurst of the farm and house and lot, precluded from participating in the distribution of the proceeds arising from the sale thereof after such conveyances were set aside as fraudulent, as to the $18,000 debt, in no way involved in the fraudulent conveyances, incurred before they were made, and admitted to be just and unpaid? After long and earnest consideration of this qestion I am led to the conclusion that its solution will be found in a full understanding of the conflict existing between our state insolvency laws and the federal statutes.

Section 3099 of our Code of 1906 provides:

"Every gift, conveyance, assignment, or transfer of, or charge upon, any estate, real or personal, every suit commenced, or decree, judgment, or execution suffered or obtained, and every bond or other writing given, with

intent to delay, hinder, or defraud creditors, purchasers, or other persons, of or from what they are or may be lawfully entitled to, shall as to such creditors, purchasers, or other persons, their representatives or assigns, be void. This section shall not affect the title of a purchaser for valuable consideration, unless it appear that he had notice of the fraudulent intent of his immediate grantor, or of the fraud rendering void the title of such grantor."

This is substantially the same as the statute of 13 Elizabeth, very generally adopted by the Legislatures of the several states of the Union. Under it, the courts of this state have very generally held that any simple contract creditor may institute, before securing judgment, his suit in equity to set aside such conveyance, and upon proof of the fraud it will be set aside only as to the debt of such creditor assailing it. Other creditors must sue either by original bill or by petition for the same purpose in order to secure its application to their debts, and priority is given creditors in the order of time of the institution of their suits. The fraudulent conveyance always remains valid as between the grantor and grantee therein. On the other hand, the Supreme Court has held in such cases as Scott v. Neely, 140 U. S. 106, 11 Sup. Ct. 712, 35 L. Ed. 358, and Cates v. Allen, 149 U. S. 451, 13 Sup. Ct. 883, 977, 37 L. Ed. 804, that no such suit can be instituted in a federal court until such creditor has reduced his debt to judgment, except in the case of a trustee in bankruptcy, who is held by the Supreme Court, as to such preferences and conveyances, to have "all the right of a judgment creditor as well as the power specifically conferred by the bankrupt act." Dudley v. Easton, 104 U. S. 99, 103, 26 L. Ed. 668; Wall v. Cox, 101 Fed. 403, 41 C. C. A. 408. By his appointment in bankruptcy proceeding the trustee is subrogated to the rights of creditors and may sue to avoid such conveyances. In fact, under only such extraordinary circumstances, before the appointment of the trustee, such as set forth in Horner-Gaylord Co. v. Miller & Bennett (D. C.) 147 Fed. 295, after bankruptcy proceedings instituted, can creditors institute suits to set aside such conveyances. It must be done by the trustee. Glenny v. Langdon, 98 U. S. 20, 25 L. Ed. 43; Trimble v. Woodhead, 102 U. S. 647, 26 L. Ed. 290; Moyer v. Dewey, 103 U. S. 301, 26 L. Ed. 394. Thus it will be seen that the position of a trustee in bankruptcy, in several material particulars, is superior to that of a creditor, so far as these conveyances are concerned. Why is this? Can there be any doubt that it is so, because Congress designed in the bankruptcy act to prevent any creditor securing those preferences which he could procure under state laws by the mere institution of a suit, and, on the contrary, intended to secure the equal distribution of the property of the bankrupt of every kind among his creditors?

But let us go a step further. Section 3100 of our Code, as amended in 1895, is generally regarded as an act preventing preference of creditors. A careful analysis of it, however, makes very clear the fact that its purpose is to create *class* preferences. It provides, in effect, that all conveyances made by an insolvent debtor shall stand as security for the debts of the creditor secured by it and such others as shall (a) be at the time existing and (b) shall either institute, or

come into and unite in a suit instituted, "to set aside and avoid" the preference. Such suit must be instituted within one year after the conveyance, or if the conveyance is admitted to record within eight months then such suit must be instituted within four months after its recordation. In other words, it simply requires the creditor secured by the conveyance to share his preference with such existing creditors who comply with certain conditions required by the act, and to these, as a class, preference is given over all others.

It is needless to point out that under the bankrupt act no such class preference can be secured. On the contrary, every transfer, conveyance made by, or lien secured against, the bankrupt within four months prior to the institution of the proceeding, by force of the act becomes absolutely null and void, and the property conveyed vests in the trustee, not for the benefit of any class of creditors but for all alike. Under the state laws it is hardly possible to conceive of how the condition here sought to be established could arise. These deeds must have, as to Hurst and Tearney, been upheld as valid; they could only have been set aside as to the debts of creditors assailing them; if the rents, issues, and profits were shown to be sufficient in five years to pay off these assailing debts, they alone would have been subject to their payment, and the estate in fee would have reverted to and remained in Tearney; on the other hand, if these rents were not sufficient to pay these debts, and the corpus had to be sold, out of the proceeds of such sale would have been paid the assailing debts and any residue would have been decreed to Tearney. Not so under the bankruptcy act. It absolutely makes void any conveyance, lien, or preference made within four months of the filing of the bankrupt petition, and in addition vests full power in the trustee to sue, in either federal or state courts, to set aside fraudulent transfers made by the bankrupt prior to these four months. In bringing such suits the trustee is not required to do so "for the benefit of the existing creditors at the time of the recordation of the alleged fraudulent transfer." Nor can he bring it for and on behalf of any one particular creditor, whereby that creditor secures a prior lien over others, nor can he institute such suit at the cost and expense of any particular creditor or creditors. His suit must be for the benefit of all creditors alike and at the cost of the common fund held by him for the benefit of all. And in administering such suit instituted by the bankrupt trustee the state as well as the federal courts must be governed by the requirements of the bankrupt act as being the superior law of the land.

For this reason I think the Supreme Court of Appeals of the state very rightly and properly held these conveyances of Hurst to Tearney void and set them aside "as to the rights of the plaintiff trustees" (representing all creditors equally), and not as to any particular creditor or class of creditors of the bankrupt, thus leaving to the bankruptcy court the administration of the funds arising from the sale of the properties according to the requirements of the bankruptcy act and not those of the state laws. A clear distinction in this regard is to be drawn between an absolute conveyance held to be fraudulent and a mortgage or deed of trust only giving security or lien for debt. If the

bankruptcy court had been confronted with a situation whereby, after the payment of all debts and costs of administration, a surplus remained by reason of the proceeds of sale arising from the fraudulently conveyed properties, it would doubtless have recognized Tearney's right to such surplus as against Hurst; but certainly it would cut out none of the creditors, precedent or subsequent, represented by the trustees, to create such surplus in Tearney's favor.

Thus it will be seen that Tearney in this case may have lost rights in this property which under state laws he might otherwise have had, for possibly few if any of Hurst's creditors would have undertaken to assail his deeds. The whole fund arising from the sale of the properties came into the control of the bankrupt court. How is it to be administered? Will Tearney be allowed to prove and secure pro rata payment of the $14,000 which he paid for the properties? I think not, for this debt, if it be considered such, arose from fraudulent intent and designs, and courts will leave parties guilty of fraud without remedy. But will a court of bankruptcy go farther, and punish the fraudulent grantee by refusing him the right to participate, with an honest and undisputed debt, in the funds collected by the trustees for the equal benefit of all honest debts of the bankrupt, properly proven? I think not. To do so in effect would be to establish a class preference in favor of Hurst's other creditors as against an honest debt due Tearney. It might be carried further and become a discrimination against an assignee for value of Tearney, in case he had assigned the debt in his lifetime to another. Being now dead, it certainly would be a discrimination against his creditors and legatees. Such preferences and discriminations are just what bankrupt acts are created to prevent and destroy, for "the primary object of the bankrupt law is to secure the equal distribution of the property of the bankrupt of every kind among his creditors." Trimble v. Woodhead, 102 U. S. 647, 650, 26 L. Ed. 290.

It therefore follows that the ruling of the referee must be reversed, and the petition filed by the trustees, praying for a return of the dividends paid to the executors of Tearney, must be dismissed.

Note.—The very valuable system, adopted by the publishers of the Federal Reporter, of annotating the syllabi of our decisions, has, upon presentation of the proof sheets of the foregoing opinion to me for correction, called my attention to a number of cases digested under the title Bankruptcy in Century Digest, §§ 497–500, and Decennial Digest, § 311. A careful examination of the cases so digested has led me to the conclusion that the principles enunciated by the Supreme Court in Keppel v. Tiffin Savings Bank, 197 U. S. 356, 25 Sup. Ct. 443, 49 L. Ed. 790, are fully in accord with the conclusion reached by me in this case.