## In re SHEINBAUM.

(District Court, S. D. New York. January 25, 1901.)

BANKRUPTCY—JURISDICTION—PROCEEDINGS AGAINST ADVERSE CLAIMANT.

Where a third person was in possession of property obtained from a bankrupt, and claiming ownership thereof, prior to the institution of the bankruptcy proceedings, the court of bankruptcy has no jurisdiction to try his title in summary proceedings, except by his consent.

The following is the opinion of WISE, Referee:

The facts relevant to the issue herein and established by the evidence may be briefly stated as follows:

The bankrupt, Abraham Sheinbaum, was on and prior to August 16, 1900, a manufacturer of clothing, occupying a loft in the premises, 21 West Third street, New York City. Early in the morning of said 16th day of August, 1900, the entire stock of goods then in said place of business was removed therefrom and carted away, the creditors claim to the place of business of the respondent, Wasserman, who is an auctioneer having a place of business at 100 Delancey street, New York City. At the time in question Wasserman was alone in business, and his former partner, Cohen, is not a proper party to this proceeding.

Wasserman admits having bought some suits of clothes and some overcoats from Sheinbaum, and claims to have paid him therefor the sum of four hundred and eighty-eight dollars. He also claims to have sold the entire property bought the very next day for $500 or $510 or $512, he not being sure of the exact amount.

Wasserman purchased not in the regular, usual and orderly course of dealing between merchants, but he bought in a most irregular and unusual way, and, apparently having in mind that his purchase and title would be challenged, he had a notary draw a bill of sale, which the bankrupt executed and ostensibly acknowledged on August 15, 1900, although the date of the instrument is palpably written over an erasure.

This bill of sale is in evidence, respondent's Exhibit 1; it lacks the usual schedule of items, but purports to convey for the consideration of $488, not only clothing, which Wasserman swears is the only kind of goods he bought and got, but much more. Here is the language employed:

"My entire right, title and interest unto my entire stock of finished and unfinished clothing, trimmings, fixtures and all other goods contained in the third loft of the premises known as No. 21 West 3rd St., in the city of New York, borough of Manhattan."

Wasserman swears that all that he bought and all he got were 180 suits of clothes and 37 overcoats, for which he paid the agreed price of $2.25 per suit and overcoat, making $488.

Why were all the other assets testified to by so many witnesses as having been in the bankrupt's possession on August 15, 1900, included by the omnibus conveyance of this bill of sale? And if these assets did not get to Wasserman, what became of them? There is no direct proof answering the latter question, but the inference is very strong that all of the goods carted away from the bankrupt's place of business so very early on the morning of August 16, 1900, went to Wasserman.

I reach this conclusion because I utterly reject all of his evidence as being utterly unworthy of credence or belief. Courts are not bound to believe an improbable state of facts simply because an interested party has sufficient nerve to swear to them.

Wasserman, who testified that he does not keep any books of account at all, further swears that on August 17, 1900, the next day after making this purchase, customers came in and he sold the whole purchase for $500, or $510, or $512. And, somewhat strange to relate, nearly all the customers who so promptly purchased all of this stock, were nonresidents of the city, customers from the South.

And above and beyond this, Wasserman testified that he and the bankrupt were strangers, that prior to Sheinbaum calling on him on August 15, 1900, he did not know his name. He then proceeds to ask the court to believe that the bill of sale was signed by Sheinbaum in the presence of the notary at the time the sale was made August 15th, and says "that is the time I paid him the money." He trusted this stranger, who was acting so mysteriously and hurriedly, and did not get possession of the property until the next day; and paid him not in a check, the payment whereof could be stopped in case of attempted duplicity on the vendor's part, but in cash.

It took a truck and six men to move the stock, and at a low calculation for expense of transportation, not forgetting the faithful notary who was with him late and early, Wasserman sold out at once at about cost, the stock he had bought from a man forced to sell in a hurry at a bargain sale, and which property had to be removed around six o'clock in the morning.

I do not believe any part of this evidence, but I do believe and find as a fact amply supported by the evidence that the bankrupt, Sheinbaum, who was not produced and who has evidently absconded, as all attempts to find him have proven futile, disposed of his property to defraud his creditors, and to prevent the same from coming into the hands of his trustee in bankruptcy.

I further find that Wasserman dealt with the bankrupt in such a way, and under such circumstances, as should have put him on his notice, and what he did in taking possession of the bankrupt's property and paying therefor, he did at his peril.

As to the value of the bankrupt's property, after making all reasonable allowance for the somewhat indefinite and uncertain character of the evidence, rendered so of necessity, because of the fraud, trickery and secretion the creditors have had to encounter, I am of the opinion that there was at least property of the absolute cash value of one thousand dollars on hand on the morning of August 16, 1900, and I think this will be found to be a very conservative estimate.

Wasserman admits having taken into his possession property which realized from $500 to $512. I am of the opinion that Wasserman acted in this transaction either as the depositary or cover for the bankrupt, or else was not a bona fide purchaser without notice of the intended fraud, as against the creditors.

A serious point is, however, raised on behalf of Wasserman, and that is, that this court has no jurisdiction to make a summary order in the premises; that the remedy of the creditors is by action wherein Wasserman can have the benefit of his constitutional right of a trial by jury.

The courts have entertained different views as to whether the district courts have the power to make a summary order in a case like the one at bar, or not. The leading cases under the present bankrupt act in both directions appear to be: In re Gutwillig, 1 Am. Bankr. R. 388, 34 C. C. A. 377, 92 Fed. 337; Mitchell v. McClure, 1 Am. Bankr. R. 53, 91 Fed. 621; In re Brodbine, 2 Am. Bankr. R. 53, 93 Fed. 643; In re Connolly, 3 Am. Bankr. R. 842, 100 Fed. 620, and cases cited therein.

As this matter must of necessity be finally determined by the learned district judge, I express no opinion on the question of jurisdiction or procedure raised on behalf of the respondent Wasserman, but report the facts and my opinion thereon as aforesaid.

Moses Feltenstein, for respondent.

Emanuel Eschwege and Bullowa & Bullowa, for creditors and receiver.

BROWN, District Judge. The evidence shows that Wasserman was in possession, claiming title under a bill of sale executed before the bankruptcy, and hence, under Bardes v. Bank, 178 U. S. 524, 20 Sup. Ct. 1000, 44 L. Ed. 1175, I cannot try his title by summary proceedings, except he consent to proceedings in this court. There is no such consent. The reference was merely to ascertain the facts sufficiently to show whether he was in actual possession under a claim in his own right. As now that is not questioned, his title cannot be tried in this court.