In re DAVIS TAILORING CO.

(District Court, D. New Jersey. March 23, 1906.)

BANKRUPTCY—JURISDICTION OF BANKRUPTCY COURT—ADVERSE CLAIM TO PROPERTY.

Where it is shown that property previously owned by a bankrupt corporation was sold by it, and payment therefor made prior to the filing of the petition in bankruptcy, a referee is without jurisdiction by a summary order to require the purchaser or his vendee in possession of the property to turn the same over to the trustee in bankruptcy, and the question of title must be adjudicated in some proper form of plenary suit.

In Bankruptcy. On sundry petition to review orders of referee.

J. Herbert Potts, for petitioner Harry L. Davis.
J. Bayard Kirkpatrick, for bankrupt Davis Tailoring Company.
John F. Marion, for William R. Kett.
Eugene Warner, David Russlander, and Martin Clark, for receivers of Davis Tailoring Company.

LANNING, District Judge. On March 5, 1906, the referee to whom this case was referred after adjudication of bankruptcy made an order requiring Harry L. Davis to appear before him for examination, under the provisions of section 21a of the bankruptcy act (Act July 1, 1898, c. 541, 30 Stat. 552 [U. S. Comp. St. 1901, p. 3430]), and to produce on the hearing before the referee all books, papers, writings, vouchers, transcripts of account, etc., in any way relating to the affairs of the Davis Tailoring Company. The petitioner, Harry L. Davis, complains of this order, on the alleged ground that the attorneys of the receivers went to his place of business on March 6, 1906, and took therefrom books, papers, and documents belonging to him and other parties. It is apparent from this statement that the acts complained of were not authorized by the order of the referee. The order simply was that Davis should appear before the referee to testify and to produce certain books, papers, etc. This petition to review must therefore be dismissed.

The second petition asks for the review of an order of the referee made on March 13, 1906, requiring Harry L. Davis to show cause before the referee on March 16th why an order should not be made requiring Davis "to turn over to the receivers of the bankrupt the entire stock of goods, chattels, wares, and merchandise of every nature and description whatsoever, and of all fixtures and of all personal property of all kinds that are now contained in the premises 100 Montgomery street, in the city of Jersey City, New Jersey, which said

premises are now alleged to be occupied by the said Harry L. Davis." The order further directed that, pending the determination of the rule to show cause, Davis and his agents should be enjoined from interfering with or transferring any of the above-mentioned goods and chattels, and that until such determination a custodian should be placed in possession of the property. The rule to show cause recites that it was made upon an affidavit filed by Eugene Warner, and upon the testimony of witnesses taken before the referee on March 6th, 7th, and 8th.

The third petition asks for the review of an order of the referee dated March 16th, on the return of the above-mentioned rule to show cause, by which the referee ordered that Harry L. Davis, and his agents and servants, turn over to the receivers of the bankrupt the goods and chattels above referred to. The order of March 16th was based on the referee's decision that Davis was not in any true sense a claimant holding adversely to the Davis Tailoring Company, and that the property in question belongs to the Davis Tailoring Company.

In Bryan v. Bernheimer, 181 U. S. 188, 21 Sup. Ct. 557, 45 L. Ed. 814, it appears that a bankrupt, nine days before the filing of a petition in bankruptcy against him, made a general assignment for the benefit of his creditors. After the filing of the petition in bankruptcy, the assignee sold the bankrupt's property, and after the adjudication in bankruptcy, but before the appointment of a trustee, the petitioning creditors applied to the District Court for an order requiring the marshal to take possession of the property, alleging that this was necessary for the interest of the bankrupt's creditors. The court made the order prayed for, and the marshal took possession. The assignee did not claim to hold the property by reason of any right in himself. He held it simply under a general assignment for the benefit of the assignor's creditors. The sale of the property by the assignee was made after the petition in bankruptcy had been filed, and with knowledge of such filing by both the assignee and purchaser. On these facts the Supreme Court held that, as a matter of law, the purchaser had no title superior to the title of the bankrupt's estate, and that the District Court had the power, in a summary proceeding, to require the marshal to seize and take possession of the property.

In Mueller v. Nugent, 184 U. S. 1, 22 Sup. Ct. 269, 46 L. Ed. 405, it appears that one William T. Nugent, shortly before the petition in bankruptcy had been filed against Edward B. Nugent, had come into possession of some money belonging to the bankrupt. An order was made in a summary proceeding, on petition and rule to show cause, by the referee to whom the case had been referred after adjudication of bankruptcy against Edward B. Nugent, requiring William T. Nugent to pay over the moneys that had come into his possession to the trustee in bankruptcy. William T. Nugent did not claim to hold the money by reason of any right vested in himself. On the facts appearing in that case, it was decided that William T. Nugent held the moneys as the agent of the bankrupt. The Supreme Court, in considering the case, said:

"The real question was whether the order of October 16th as confirmed by the District Court, was a lawful order. It was to be determined, as a mere question of law, on the facts found, that the money belonged to the

bankrupt's estate, and was then in Nugent's possession as the bankrupt's agent, he asserting no adverse claim. And the question of the validity of that order involved the validity of the order to show cause. The proposition was that, as matter of law, where property of a bankrupt has come into the hands of a third party before the filing of the petition in bankruptcy, as the agent of the bankrupt, and to which he asserts no adverse claim, the bankruptcy court has no power by summary proceedings to compel the surrender of the property to the trustee in bankruptcy duly appointed. * * * There was no pretense that, at the date of the filing of this petition in bankruptcy this money of the bankrupt, $4,133.45 of which had been collected a few days, and $10,100 a few hours, before, was held subject to any adverse claim, or that the right or title thereto had been passed over to another. The position now taken amounts to no more than to assert that a mere refusal to surrender constitutes an adverse holding in fact and therefore an adverse claim when the petition was filed, and to that we cannot give our assent. But suppose that respondent had asserted that he had the right to possession by reason of a claim adverse to the bankrupt, the bankruptcy court had the power to ascertain whether any basis for such a claim actually existed at the time of the filing of the petition. The court would have been bound to enter upon that inquiry, and in doing so would have undoubtedly acted within its jurisdiction, while its conclusion might have been that an adverse claim, not merely colorable, but real, even though fraudulent and voidable, existed in fact, and so that it must decline to finally adjudicate on the merits. If it erred in its ruling either way, its action would be subject to review. In this case, however, respondent asserted no right or title to the property before the referee, and the circumstances under which he held possession must be accepted as found by the referee and the District Court."

The result reached in that case by the Supreme Court was that the summary order was properly made.

But the facts in the case now in hand are very different from the facts in either of the two cases above referred to. William R. Kett testifies that on December 1, 1905, four days before the petition in bankruptcy was filed against the Davis Tailoring Company, he purchased the property in question from that company for the sum of $5,000, and that on the same day he paid $2,000 of the consideration money in cash, for which he took a receipt produced before the referee, and that the residue of the consideration money was paid by him on the same day by a check for $3,000 made payable to the order of the Davis Tailoring Company, which check, having passed through the bank and been paid, was also produced before the referee. He also produced a bill of sale dated December 1, 1905, made by the Davis Tailoring Company to him. It is true that Harry L. Davis was the manager of the Davis Tailoring Company and effected the alleged sale to Kett, but there is no testimony that directly contradicts Kett's statement that he purchased the property for $5,000 and made full payment therefor on December 1, 1905. He further says that he put his brother into the store as his agent, and that he sold a portion of the goods at retail between December 1st and Christmas, and that on January 16, 1906, he sold the remaining property to Harry L. Davis for $7,000, a portion of which Davis has paid; the remaining portion being secured to Kett by promissory notes. Davis corroborates Kett's testimony and claims to be the owner of the property and to hold it adversely to the Davis Tailoring Company. The transaction has its suspicious aspect, but, as above stated, the alleged sale to Kett took place four days before the

petition in bankruptcy was filed against the Davis Tailoring Company, and, so far as appears, without knowledge on the part of Kett that the Davis Tailoring Company was insolvent. The circumstances therefore are such as to render the case an improper one for a summary order directing Davis, Kett's vendee, to turn the property over to the receivers of the bankrupt estate. The orders of March 13th and March 16th should be set aside, and the question as to the title to the property should be adjudicated either in a replevin suit or some other proper form of plenary suit.

This court also made a rule to show cause dated March 8, 1906, returnable before this court on March 19th, requiring Eugene Warner and David Russlander to show cause why they should not be required to return to William R. Kett, or to Harry L. Davis, all books and papers and other property belonging to them or either of them.

The conclusion above reached, on the second and third petitions to review, makes it necessary that these gentlemen should return to Kett and Davis any property taken by them that does not clearly belong to the Davis Tailoring Company. Some of the books and papers taken, I understand, are unquestionably the property of that company. They should not be returned, but should remain in the custody of the receivers. I assume that the counsel will be able to agree between themselves as to what property should be retained by the receivers, and what should be returned to Kett and Davis. If they cannot agree, application may be made to the referee for instructions on the point.