HORNER–GAYLORD CO. et al. v. MILLER & BENNETT et al.

(District Court, N. D. West Virginia, July 20, 1906.)

1. EQUITY—BILL—MULTIFARIOUSNESS.

In a suit for the appointment of a receiver of a bankrupt prior to adjudication for the purpose of taking possession of property alleged to have been fraudulently conveyed to various relatives of the bankrupt, the bill was not multifarious because many claimants were joined who were the various alleged fraudulent transferees of the property.

[Ed. Note.—For cases in point, see vol. 19, Cent. Dig. Equity, §§ 371, 372.]

2. BANKRUPTCY—FRAUDULENT CONVEYANCES—REMEDIES OF CREDITORS—APPOINTMENT OF RECEIVER—JURISDICTION.

Bankr. Act July 1, 1898, c. 541, § 23, subd. b, 30 Stat. 552 [U. S. Comp. St. 1901, p. 3431], as amended by Act Cong. Feb. 5, 1903, c. 487, § 8, 32 Stat. 798 [U. S. Comp. St. Supp. 1905, p. 686], provides that suits by a trustee in bankruptcy shall only be brought or prosecuted in the courts where the bankrupt's estate is being administered by such trustee or might have been brought or prosecuted if proceedings in bankruptcy had not been instituted, unless by the consent of the proposed defendant, except suits for the recovery of property under section 60, subd. b, and section 67, subd. e, 30 Stat. 562, 564 [U. S. Comp. St. 1901, pp. 3445, 3449], which relate to preferences given by the bankrupt and conveyances made by him within four months prior to the filing of a petition with intent to defraud creditors, which are declared void; such sections being amended so as to provide that for the purpose of setting aside such preferences or conveyances any court of bankruptcy and any state court having jurisdiction shall have concurrent jurisdiction. Held, that a court of bankruptcy, after the filing of a petition and before adjudication, has jurisdiction of a bill by creditors for the appointment of a receiver and to vacate alleged fraudulent conveyances of the bankrupt property made within four months prior to the filing of the petition.

3. FRAUDULENT CONVEYANCES—TRANSFER TO RELATIVES.

Where certain bankrupts made transfers of their property to various of their relatives, leaving themselves without sufficient means to satisfy their creditors, the transfers were prima facie fraudulent, and the burden was on the grantees to furnish strong proof that the transfers were made in good faith.

[Ed. Note.—For cases in point, see vol. 24, Cent. Dig. Fraudulent Conveyances, §§ 138, 144, 801, 810.]

4. BANKRUPTCY—RECEIVER—APPOINTMENT—INJUNCTION.

Where, after the filing of a bankruptcy petition, but before adjudication, certain creditors filed a bill to set aside alleged fraudulent transfers of the bankrupt's property to their relatives, charging that by far the largest part of the property so transferred consisted of two stocks of merchandise easily dissipated, and that the transferees were actively engaged in secreting and carrying the same away, the bill warranted the appointment of a receiver and the issuance of an injunction restraining the transferees from disposing of any of the property so transferred and requiring them to deliver the same to the receiver.

Douglass & Steptoe, Robert F. Kidd, and C. M. Bennett, for plaintiffs.

Davis & Davis, and L. H. Barnett, for defendants.

DAYTON, District Judge. On June 16, 1906, the Horner-Gaylord Company, a corporation, and others, creditors, filed their petition in involuntary bankruptcy against George Miller and Charles

Bennett, partners trading as Miller & Bennett and also as George Miller & Co., and on the same day they presented to this court their bill against said parties, Porter Bennett, Samuel Bennett, Scott Bennett, William V. Miller, Lutitia Brannon, and Pearl Bennett, in which they allege themselves to be wholesale merchants and creditors of the said partnerships of Miller & Bennett and Miller & Co., setting forth the amounts due to each of them therefrom; that said George Miller and Charles Bennett had been engaged under the firm name of Miller & Bennett in the mercantile business at Tanner in Gilmer county, W. Va. and under the firm name of George Miller & Co. about three miles in the country from Tanner; that they bought on credit and petitioners' debts had been incurred for merchandise furnished by them to said firms; that said defendants George Miller and Charles Bennett were heavily indebted otherwise and wholly insolvent; that the stock of goods carried until about June 9, 1906, by them at the Tanner store was worth about $4,000, and at the other store about $1,800; that George Miller, until recently, owned shares of stock in the Tanner Gas Company of the value of $460, five shares of stock in the Glenville Banking & Trust Company, a tract of land on De Kalb run in said county, incumbered, however, with most of the purchase money unpaid, and some lumber and cross-ties cut from said land; that on June 8, 1906, said George Miller and Charles Bennett, being pressed by creditors, made a pretended sale of the Tanner stock of goods to Samuel Bennett, the father, and Scott Bennett, the brother, of said Charles Bennett, who had full knowledge of their insolvency and fraudulent purpose, and for a fictitious consideration never paid; that since that date Samuel Bennett and Scott Bennett have been in possession and have been secreting, crating, and carrying away, under cover of darkness, large quantities of said goods to get them out of the reach of the creditors of said firm of Miller & Bennett, and if suffered to remain in possession all of said stock of goods will have disappeared; that on or about June 13, 1906, the said George Miller and Charles Bennett made a pretended sale of the other stock of goods held under the firm name of George Miller & Co. to William V. Miller, the brother of George Miller; that William V. Miller had no means with which to buy, that said sale was fictitious, fraudulent, and void, and that said William V. Miller is engaged in boxing up said goods, carrying them away to the home of his mother, and there secreting them in order to get them out of the reach of creditors; that said Miller & Bennett owned a lot of timber, saw logs, and ties which they had contracted to the Little Kanawha Log & Tie Company to be delivered in the Little Kanawha river, but which they refused to deliver themselves, but made a fraudulent and fictitious transfer of to Porter Bennett, another brother of said Charles Bennett, who had sold the same to said Little Kanawha Log & Tie Company for about $600 cash; that on the 13th of June, 1906, the said George Miller transferred to Lutitia Brannon a part of his stock in the Tanner Gas Company and on the same day conveyed the balance of said Gas Company stock held by him to Pearl Bennett; that Lutitia Brannon is the sweetheart and Pearl Bennett, the wife of Porter Bennett,

is the sister-in-law of said George Miller, and said transfers were without valid consideration, fraudulent, and void; that these alleged bankrupts have thus disposed of substantially all their assets in a very few days; and Charles Bennett has remarked to third parties that "it is a skin game and I might as well have as many of the hides as any one else." The bill then sets forth the filing of the petition in bankruptcy by the plaintiffs against said George Miller and Charles Bennett as individuals and partners, and prays that a special receiver be appointed to take possession of the stocks of goods aforesaid; that Samuel Bennett, Scott Bennett, William V. Miller, Porter Bennett, Lutitia Brannon, and Pearl Bennett be enjoined from selling or disposing of any of the property transferred to them and be required to turn such over to the special receiver; that such transfers be set aside as fraudulent and void, and all of said property be held and made liable for the debts of said George Miller and Charles Bennett, and said receiver hold the same, as well as any other property he may find of theirs, until the further order of this court. Upon the presentation of this bill on said June 16, 1906, the injunction prayed for was awarded and a special receiver appointed to take possession of said properties. Thereupon on June 25, 1906, the defendants Samuel Bennett, Scott Bennett, William V. Miller, Porter Bennett, Lutitia Brannon, and Pearl Bennett jointly served notice upon the plaintiffs that on July 3, 1906, they would move to vacate said injunction and discharge the receiver. On said 3d day of July, 1906, they did make such motion, filing, as of that day, their demurrers and answers, and the plaintiffs filed some 12 affidavits in opposition. It is not necessary to refer to these answers further than to say that they deny the fraud charged in the several transfers to them and assert the validity of such, for it is practically conceded that they, not having been filed until the very day of the motion to dissolve and discharge, can only be used, so far as such motions are concerned, in the nature of affidavits of good faith in the making thereof.

The sole questions therefore arise on demurrer, and counsel earnestly and learnedly argue that two grounds are apparent why the bill cannot be maintained: First, because it is multifarious; and, second, because this court is without jurisdiction at the suit of the plaintiffs (as creditors) to declare the several transfers fraudulent and void and grant the relief prayed for.

The first objection can be speedily disposed of. It is always to be remembered that the determination of the question of whether a bill is multifarious is one largely within the sound discretion of the court, and dependent to a very considerable degree upon the particular facts of each case. United States v. American Bell Telephone Co., 128 U. S. 315, 9 Sup. Ct. 90, 32 L. Ed. 450; Walker v. Powers, 104 U. S. 245, 26 L. Ed. 729; Brown v. Guaranty & Trust Co., 128 U. S. 403, 9 Sup. Ct. 127, 32 L. Ed. 468; South Penn Oil Co. v. Calf Creek Oil & Gas Co. (C. C.) 140 Fed. 516; Shafer v. O'Brien, 31 W. Va. 601, 8 S. E. 298.

In Brown v. Guaranty & Trust Co., supra, it is held:

"It is not indispensable that all the parties to a suit in equity should have an interest in all the matters contained in the suit. It will be sufficient, in order to avoid the objection of multifariousness, if each party has an interest in some material matters in the suit, and they are connected with the others."

In the case here the essential basis of the suit is the right, if any exists, to subject certain property to the payment of the debts of the alleged bankrupts, as their property and not that of others. It is one subject-matter, and it is immaterial how many different claimants may arise for it as a whole or to parts of it. The several interests of each can well be determined in the one controversy.

The second objection presents a far more difficult and perplexing question. Counsel for defendants have very clearly and in apt terms expressed the contention, as follows:

"Where property of the bankrupt passed out of the possession of the bankrupt, before the adjudication of bankruptcy, and is held by a third person under an adverse claim, a court of bankruptcy will not entertain a proceeding of a summary character for the purpose of compelling the delivery of the possession of such property by such third person to the officials of the bankruptcy court. The only remedy in such cases is by a plenary suit by the trustee to determine the validity of such adverse claims, which plenary suit may be brought either in the United States District Court or in any appropriate state court."

In short it is insisted that the suit can only be brought after the adjudication in bankruptcy, which alone can give jurisdiction to the bankrupt court of the subject-matter, and by the trustee in whom the property vests and as a property right, and not by the creditors who can only have the right to share in the proceeds of such property after the trustee holding the legal title to it has sold it.

On the other hand, it is as earnestly insisted by learned counsel for plaintiffs that the District Court of the United States sitting as a court of bankruptcy has jurisdiction, upon petition of creditors ancillary to their petition in bankruptcy, to appoint receivers of the estates of bankrupts and restrain adverse claimants of the property from disposing of the same, insisting that such jurisdiction is given by clause 3 of section 2, of Act of July 1, 1898, c. 541, 30 Stat. 545 [U. S. Comp. St. 1901, p. 3421] which authorizes such court "to appoint receivers or the marshals, upon application of parties in interest, in case the courts shall find it absolutely necessary for the preservation of estates, to take charge of the property of bankrupts after the filing of the petition and until it is dismissed or the trustee qualified."

The old vexatious question involved of whether the bankruptcy court has independent jurisdiction, at the suit of the trustee in bankruptcy, to set aside fraudulent transfers of property made within four months of the bankruptcy proceeding, take possession of and sell for the benefit of the bankrupt's estate the property so transferred, should in this connection be considered. The terms of the original act of 1898, section 23, cl. b, 30 Stat. 552 [U. S. Comp. St. 1901, p. 3431], provided:

"Suits by the trustee shall only be brought or prosecuted in the courts where the bankrupt, whose estate is being administered by such trustee,

might have brought or prosecuted them, if proceedings in bankruptcy had not been instituted, unless by consent of the proposed defendant."

On January 15, 1900, the District Court for the Western District of North Carolina, in the case of Cox v. Wall (D. C.) 99 Fed. 546, held that this clause operated as a limitation upon the jurisdiction of the Circuit Courts of the United States and did not affect the jurisdiction in bankruptcy conferred upon the district courts by other clauses of the act, and therefore district courts in bankruptcy had such jurisdiction. This case was taken to the Circuit Court of Appeals for this circuit and is reported as Wall v. Cox, 41 C. C. A. 408, 101 Fed. 403, wherein the District Court is affirmed and such jurisdiction upheld. In the course of an able discussion and review of the question, Judge Waddill clearly and pointedly set forth the evils arising under the contrary theory, in these words:

"To clothe the court with power to entertain a bankruptcy petition, and discharge and relieve the bankrupt from the payment of his debts, and not confer upon it the power to make the person thus receiving an acquittance and release, and those fraudulently colluding with him, bring in and give up to the creditors interested the bankrupt's property which of right belongs to them, would be a strange anomaly. * * * To say that the United States District Court, sitting as a court of bankruptcy, with all the analogous powers and jurisdiction of a court of equity, and with jurisdiction at law and equity specially conferred upon it as ancillary and supplementary to its inherent power in an involuntary bankruptcy proceeding, can only afford the creditors the relief of making certain that the debtor is a bankrupt, and has committed acts of bankruptcy, and that, where he has fraudulently transferred his estate, although it be the act of bankruptcy set up, as in this case, that as against the alleged fraudulent transferee no relief can be afforded, but the creditors must inaugurate in the state courts wherever such transferee happens to reside litigation to secure any substantial relief, would be to impose upon them a burden that would be unreasonable in the extreme, and in many cases one that would be entirely ineffective; and, besides, it would bring about a result manifestly not contemplated by those enacting the law, the predominating feature of all bankruptcy legislation being simplicity and expedition in the collection and administration of bankrupt's estates. Bankrupts wishing to defraud their creditors, and those colluding with them, would be a bungling set of conspirators who could not elude and evade a law so handicapped by the machinery necessary to put it in motion, and the result would be that the estate, pending the many stages of litigation through which creditors would have to pass, and, indeed, in anticipation of the necessity of the various requirements, would be readily placed beyond their reach."

This question was in this case and in several others certified to the Supreme Court which, in the four cases of Bardes v. Bank, 178 U. S. 524, 20 Sup. Ct. 1000, 44 L. Ed. 1175; Mitchell v. McClure, 178 U. S. 539, 20 Sup. Ct. 1000, 44 L. Ed. 1182; Hicks v. Knost, 178 U. S. 541, 20 Sup. Ct. 1006, 44 L. Ed. 1183; and Wall v. Cox, 181 U. S. 244, 21 Sup. Ct. 642, 45 L. Ed. 845, reversed the Circuit Court of Appeals in the latter case and held that the District Court had no jurisdiction except by the consent of the proposed defendant. Doubtless, to meet the unfortunate state of affairs so clearly set forth by Judge Waddill and made apparent by these decisions, Congress, in its amendments to the bankrupt act, passed in February, 1903 (Act Feb. 5, 1903, c. 487, § 8, 32 Stat. 798 [U. S. Comp. St. Supp. 1905, p. 686]), amended this clause b of section 23 by adding to the end

thereof the words "except suits for the recovery of property under section sixty, subdivision b, and section sixty-seven, subdivision e." thereby clearly, I think, making the section limit the right of the trustee to sue in the federal courts (including, of course, the bankruptcy court) in all cases as held by the Supreme Court, except in cases for recovery of property under section 60, cl. b, 30 Stat. 562 [U. S. Comp. St. 1901, p. 3445], and section 67, cl. e, 30 Stat. 564 [U. S. Comp. St. 1901, p. 3449], where the jurisdiction of such courts, by necessary implication alone, would be established as independent and plenary. By reference to these sections we find section 60, cl. b, to relate to preferences given by the bankrupt and section 67, cl. e, to relate to all conveyances, transfers, assignments, or incumbrances of bankrupt's property or any part thereof made by him within four months prior to the filing of the petition (not the date of adjudication nor appointment of the trustee), with intent to hinder, delay, or defraud creditors, which are all declared null and void as against such creditors (the word is not trustee), and all property so transferred is to be and remain a part of the assets and estate of the bankrupt and shall pass to his said trustee, whose duty it shall be to recover and reclaim the same by legal proceedings or otherwise for the benefit of creditors. And to settle the question of jurisdiction finally the amendments of 1903 (Act Feb. 5, 1903, c. 487, §§ 13, 16, 32 Stat. 799, 800 [U. S. Comp. St. Supp. 1905, pp. 689, 690]), add to both of these clauses of sections 60 and 67 these words:

"For the purpose of such recovery any court of bankruptcy as hereinbefore defined, and any state court which would have had jurisdiction if bankruptcy had not intervened. shall have concurrent jurisdiction."

Thus it will be clearly seen that the jurisdiction found by the Supreme Court in the four cases referred to not to exist in the District Court as a bankruptcy court has been expressly supplied by this legislation, and it is no longer an open question that in an ancillary proceeding such court can maintain and should maintain jurisdiction to set aside fraudulent conveyances made by bankrupts within four months of the filing of petitions seeking to adjudge them as such. In other words, freely paraphrasing the language of Judge Waddill, in Wall v. Cox, hereinbefore quoted, we can now say that the United States District Court, sitting as a court of bankruptcy, with all the analogous powers and jurisdiction at law and equity specially conferred upon it as ancillary and supplementary to its inherent power, cannot only afford the creditors the relief of making certain that the debtor is bankrupt, has committed acts of bankruptcy, has fraudulently transferred his estate, but can also enable them to pursue such fraudulent transferees and compel them to surrender the property, which in contemplation of the law, as set forth in section 67, cl. e, is, and has been, regardless of such transfers, the assets of the bankrupt to be administered for their benefit. But is it restricted to one single method of securing control of these assets so fraudulently conveyed? Is it compelled to first adjudicate the bankruptcy, await the selection of the trustee by the creditors, and then be wholly dependent upon his convenience, if not his dictum, when and where he and he alone

as trustee shall institute a suit for the purpose of staying the hand of the fraudulent transferee in wasting and destroying the bankrupt's assets? In other words, is the creature of the court's power, the trustee, clothed with a greater power than the court, at the instance of the true parties in interest, the creditors, has itself? The mere statement of the proposition involves its absurdity. It is true that the courts in all legal proceedings will pursue orderly and fixed methods of procedure; but, so far as courts of equity are concerned, always with the express understanding that the dictates of equity and good conscience will thereby be promoted. When fixed rules of procedure do not promote, but on the contrary prevent the administration plenarily of justice and equity, such courts sweep aside such arbitrary rules of procedure without a moment's hesitation in order to do the right in the premises. It is also true that the power to interfere with the right of a man to control his own property without let or hindrance from another, until by legal proceedings such right of interference is established, should be exercised with the utmost care and caution, only under extraordinary circumstances, and then only to the extent necessary to prevent imminent and great wrong and injury. The appointment of receivers generally is a power inherent in the courts calculated to be greatly abused unless exercised with the wisest caution and forbearance.

While these things are true, it is to be remembered that all men must conform to the true principles of the law laid down by Justinian: "honeste vivere, alterum non laedere, suum tribuere." While a man, by the law, under these rules is guarantied the free use and control of his property, he is not by any principle of justice or equity to be authorized to obtain by fraud the property of another and insist upon its use and control against the interests of the other. He must render to the owner his own. Nor is he authorized to combine and confederate with another to cheat and defraud the creditors of the latter by securing against their interests transfer and control of the property of the debtor to which they have right to look for the liquidation of their debts. He must live honestly and not injure another. Courts of bankruptcy have been uniformly held to be courts of equity with full equity powers within the scope of their jurisdiction, and if their jurisdiction in the premises be once established, as we have shown to be the case here, by express legislative grant, then I insist its right to do equity to all parties in interest, bankrupts, transferees, creditors alike, follows as clearly and logically as day follows the night. It becomes an inherent right, bred in the very bone and marrow of its power and duty to take jurisdiction independent of any and all express statutory provisions. But there is express provision in the bankrupt act for the exercise of this power. Jurisdiction in the court being established, as it has so clearly been, section 2 of clause 3 has full force and virtue. This section authorizes the bankrupt courts "to appoint receivers or the marshals, upon application of parties in interest, in case the courts shall find it absolutely necessary for the preservation of estates, to take charge of the property of bankrupts after the filing of the petition and until it is dismissed or the trustee

qualified." But it is insisted the words in this clause "the property of the bankrupt" cannot mean and cannot be extended to property which he has transferred. This is true so far as property is concerned which he has honestly and legally transferred, for the simple reason that in such case it is not "the property of the bankrupt." It is not true as to property which he has fraudulently and illegally transferred or sought to transfer, because such transfers, by clause "e" of section 67, are expressly declared null and void and the property so involved to be the property of the bankrupt.

So long as there is doubt about the integrity of the transfer, and imminent danger of the loss, waste, or dissipation of the property is not apparent, then the rule by which the court should control its action would seem clearly to be to await the regular course of procedure and allow the trustee, after his appointment, to institute suit to test the transfer's integrity. But where the facts clearly indicate a dishonest, fraudulent, and corrupt character of transfer and an imminent danger of loss and dissipation of the property, then, under authority of this express provision, it seems to me the bankrupt court would violate every principle of equity and good conscience if it did not act, and act promptly, just as courts of equity have always done in such cases for centuries. It therefore reduces itself, as is so often the case in equitable proceedings, to an appeal to the wise discretion of the court under the particular facts arising in each case.

Even before the amendment of 1903, the Supreme Court in Bryan v. Bernheimer, 181 U. S. 188, 21 Sup. Ct. 557, 45 L. Ed. 814, decided April 15, 1901, restricted the broad construction given to their ruling in Bardes v. Bank, and under the particular state of facts existing in the case upheld the jurisdiction of the District Court. In the case of the First National Bank v. Title & Trust Co., 198 U. S. 280, 25 Sup. Ct. 693, 49 L. Ed. 1051, the proceedings in the District Court reviewed transpired before the amendment of 1903, and in consequence, the decision of the Supreme Court was based upon the original act and is not applicable to the new conditions created by the amendment. This statement is likewise true of the cases of Louisville Trust Co. v. Comingor, 184 U. S. 18, 22 Sup. Ct. 293, 46 L. Ed. 413; Mueller v. Nugent, 184 U. S. 1, 22 Sup. Ct. 269, 46 L. Ed. 405; In re Michie (D. C.) 116 Fed. 749; In re Baird (D. C.) 116 Fed. 765; Beach v. Macon Grocery Co., 116 Fed. 143; 53 C. C. A. 463; In re Sheinbaum (D. C.) 107 Fed. 247; In re Kellogg, 121 Fed. 336, 57 C. C. A. 547; In re Ward (D. C.) 104 Fed. 985—cited by learned counsel for defendants, and they are therefore no longer in point. In Brumby v. Jones (C. C. A.) 141 Fed. 318, also cited, the facts were so wholly different as to constitute a wholly different question. There the effort was made, by petition, to cancel the satisfaction, regularly entered of record, of a mortgage, and have the mortgage restored as a lien upon the bankrupt's property originally subject thereto, and the court very well held that no jurisdiction of such a controversy could be entertained because the mortgaged property was not in the possession of the bankrupt's trustee, was no part of the estate for distribution, and in which his general creditors had

no interest.    On the other hand the cases of In re Wiesen Bros. (D. C.) 138 Fed. 164, and In re Moody (D. C.) 131 Fed. 525, and especially the case of Whitney v. Wenman, 198 U. S. 539, 25 Sup. Ct. 778, 49 L. Ed. 1157, cited, the latter the only one by the Supreme Court reviewing action taken by the bankrupt court since the amendment of 1903, sustain jurisdiction and substantially uphold the views I have herein expressed.

It only remains therefore to again consider whether this court exercised a wise and cautious discretion, under the circumstances, as set forth in the bill, in awarding the injunction and appointing the receiver.    In this connection it is to be noted that the Supreme Court of Appeals of West Virginia, in a long line of cases, some of which are Stauffer v. Kennedy, 47 W. Va. 714, 35 S. E. 892; Reynolds' Adm'rs v. Gawthrops' Heirs, 37 W. Va. 3, 16 S. E. 364; Burt v. Timmons, 29 W. Va. 441, 2 S. E. 780, 6 Am. St. Rep. 664; Herzog v. Weiler, 24 W. Va. 199; Bartlett v. Cleavenger, 35 W. Va. 719, 14 S. E. 273; Moore v. Gainer, 53 W. Va. 403, 44 S. E. 458, has laid down the law to be in this state that (quoting the language of the last case) :

"When a conveyance in favor of a relative leaves a man without means to satisfy his creditors, it is the basis of a strong suspicion of fraud.    It is prima facie fraudulent, and calls upon the grantee to furnish strong proof of the bona fides of the transaction."

In other words, the conveyance or transfers made under such circumstances are presumed to be fraudulent, and the burden is not upon the creditors, but upon the grantee or transferee, to show the contrary.    In this case, these insolvent partners are charged with having made five distinct transfers, within substantially one week, of practically all their property available to general creditors, to father, brothers, sister-in-law, and sweetheart of one or the other of them, apparently under the impression, if the statement as charged in the bill to have been made by Bennett was so made by him, that "it was a skin game, and he (they) might as well have as many of the hides as any one else."    It is also charged that by far the largest part of the property so transferred consisted of two stocks of merchandise easily dissipated, and that the transferees thereof were actively engaged in secreting and carrying the same away.    Under these circumstances, while full and fair opportunity will in course of the proceeding be given to these near relatives to uphold and make clear the good faith and integrity of these transfers, as they must first do before they can be sustained, it seems to me that it would have been nothing short of a travesty upon justice, equity, and good conscience not to have stayed their hand and taken possession of the property, the moment appealed to by creditors, and that it would be gross violation of clear duty, at this time at least, to either dissolve the injunction or discharge the receiver.

The motion to this effect will therefore be overruled.

NOTE.—Since the foregoing opinion was written, the cases of In re Knopf (D. C.) 144 Fed. 245, and In re Davis Tailoring Co. (D. C.)

144 Fed. 285, have been published. In the first named, Judge Brawley, of the District Court of South Carolina, in this circuit, has fully and ably discussed the question herein involved, and arrives at the same conclusion that I have. In the second case, on the contrary, Judge Lanning, of the District Court of New Jersey, may be said to have reached the very opposite conclusion. This conflict indicates the necessity of an authoritative decision of the point, and I express the hope that appeal herein will be taken for that purpose.