THOMAS v. FLETCHER.

(District Court, D. Maine. April 8, 1907.)

No. 33.

1. BANKRUPTCY—FRAUDULENT TRANSFERS.

A transfer of a merchant's stock and all his attachable property to his wife for a nominal consideration for the purpose of preventing the levy of attachments, more than four months prior to the filing of a bankruptcy petition against him was fraudulent, and subject to be set aside at the instance of the trustee.

2. FRAUDULENT CONVEYANCES—TRANSFER TO WIFE—CONSIDERATION.

A bankrupt and S. acquired the right to remove the timber from certain land, each paying $500, which they obtained from a bank on their joint and several unsecured note. The last renewal note signed by the bankrupt matured October 1, 1905, a month after he transferred his interest in such timber to his wife, while insolvent. She testified that the bankrupt was desirous of surrendering to S. all right in the timber, but that

she objected, and that the consideration for such transfer was her agreement to substitute her name on the note to the bank, instead of that of the bankrupt, which was subsequently done. *Held*, that the consideration for such transfer was insufficient to support it, but that the same was fraudulent as against the bankrupt's creditors.

Albert S. Woodman, for complainant.
Nathaniel B. Walker, for respondent.

HALE, District Judge. This suit in equity seeks to set aside certain transfers alleged to have been made by the bankrupt to his wife, Annie M. Fletcher. The facts in the case are sufficiently set forth in the report of the special master. The substantial part of the report is as follows:

"Elias Thomas, Jr., and Edwin I. Littlefield, were examined as witnesses for the plaintiff, and the respondent was examined in her own behalf. The schedules filed by John W. Fletcher in bankruptcy, and the testimony of his wife in the proceedings before the referee, were admitted as evidence by agreement. It was admitted that John W. Fletcher, the bankrupt, was insolvent on the 1st day of September, 1905, that he then owed $2,700, and that on that day he conveyed all his attachable property to his wife, the respondent herein, for a nominal consideration. The property was a small stock of groceries in the store kept by him in Kennebunk, together with the book accounts due him. Of these a bill of sale was given. The other property was the equal right with one Smith to remove the growth from a lot of land in Wells, Me., at any time within three years from May 29, 1904. Howard K. Smith and John W. Fletcher bought this lot from one Towne for $1,000 cash, each paying therefor $500. It has been frequently held in this state that such conveyances are prima facie fraudulent as to creditors, and the burden of proof is placed on the transferee to show the contrary. Wheelden v. Wilson, 44 Me. 18; Robinson v. Clark, 76 Me. 493; Horner Gaylord Co. v. Miller & Bennett, 17 Am. Bankr. Rep. 257, 147 Fed. 295.

"There are no circumstances connected with the case that rebut this presumption of fraud. The witness Edwin I. Littlefield, a York county sheriff, testified that about September 1, 1905, he went to the Fletcher's store with a writ to make an attachment. Mrs. Fletcher told him that the property had been transferred to her, and said it was done to prevent attachments. Fletcher paid that claim, and a few days later Littlefield went with another writ and attached the stock of goods. Mr. Fletcher gave him the key to the store, which he retained till after the adjudication in bankruptcy of Fletcher. He then gave the key to the trustee. An involuntary petition in bankruptcy was filed by creditors January 11, 1906. After the adjudication, Mr. Fletcher filed his schedules, properly sworn to, and in them he claims the groceries and book accounts as his own. The trustee took possession of these, and sold the goods and has collected the accounts in part.

"The respondent, called in defense, testified clearly that the sole purpose of the transfer of the property to her was to prevent attachments, that her husband was harassed by debts and attachments and could not go on with his business, and they thought the transfer to her would end the trouble. Her statement that she did not intend to defraud his creditors seems quite immaterial.

"As to the transfer of the right to cut timber on the Towne lot, she testified that the consideration was the substitution of her name for that of her husband on a note held by the Ocean National Bank. The $1,000 paid by Fletcher and Smith for that right had been hired from that bank on their joint and several unsecured note in May, 1904. This was a four-months note, and was kept alive by renewals. The last note signed by Mr. Fletcher matured October 1, 1905, a month after the date of the deed to his wife. She testified that her husband was desirous of giving up to Mr. Smith all right in the wood lot, but that she objected to it, and agreed that, if the bank would consent, she would put her name on the note together with Smith's when the next renewal

came. She was uncertain whether this arrangement was made after the deed of the lot to her or before. Mr. Smith was consulted and got the consent of the bank to the substitution of Mrs. Fletcher's name for her husband's on a new note which was given and signed by her October 1, 1905.

"It is impossible to come to the conclusion that this was any consideration for the transfer of the property to her when it was made; and a decree should be entered voiding that deed and the other conveyance, and the respondent ordered to transfer and convey to the complainant the property described in the conveyances free and clear from all incumbrances.

"Lewis Pierce, Special Master."

The principal contention in the case arises over the transfer of the interest in real estate. It is urged by the respondent that the motives of the vendor are not shown to have been fraudulent; that, in any event, the vendee did not assist in carrying into execution any fraudulent intention; and that there is no evidence of a lack of good faith in the proceedings.

The case has been heard by a special master of great experience and ability. He has had before him the parties and their witnesses, and has heard their testimony. So certain did he feel of his conclusions that he ordered the respondent on the spot to make the transfers prayed for by the complainant. His opinion is entitled to great weight. I have examined the testimony with care, and fully agree with the special master.

In Wheelden v. Wilson, 44 Me. 18, cited in the report, the court said:

"The plaintiff presented himself as a witness upon the stand in his own behalf, and was permitted by the court, against the objection of the defendant, to answer the following interrogatory proposed by his counsel: 'What was your motive in taking the mortgage?' The validity of the mortgage, with reference to which this inquiry was made, was a material fact in issue between the parties. It was assailed by the defendant on the ground of fraud. Whether it was fraudulent, so far as the plaintiff was concerned, depended entirely upon the intent or motive with which he received it. If it were received for the honest purpose of securing a debt from the mortgagor, or to protect himself from liabilities which he had assumed for the mortgagor, and for no other purpose, the law will uphold it. But if taken by the plaintiff for the purpose of aiding or assisting the mortgagor to defraud or delay his creditors, or if such purpose constituted any part of the motive which induced him to take the mortgage, then it was fraudulent and void as to creditors. The question of motive or intention was a question of fact, to be determined by the jury."

I have had occasion before, when issues of this sort have been presented, to refer to Blennerhassett v. Sherman, 105 U. S. 100, 26 L. Ed. 1080, in which the court said:

"It is not enough, in order to support a settlement against creditors, that it be made for a valuable consideration. It must also be bona fide. If it be made with intent to hinder, delay, or defraud them, it is void as against them, although there may be in the strictest sense a valuable or even an adequate consideration."

In Davis v. Schwartz, 155 U. S. 631, 15 Sup. Ct. 237, 39 L. Ed. 289, Mr. Justice Brown, in speaking for the Supreme Court, said:

"It has been the accepted law ever since Twyne's Case, 3 Coke, 80, that good faith, as well as a valuable consideration, is necessary to support a conveyance as against creditors. In that case Pierce, being indebted to Twyne in £400, was sued by a third party for £200. Pending such suit, he conveyed .

all his property to Twyne in consideration of his debt, but continued in possession, sold certain sheep, and set his mark on others. It was resolved to be a fraudulent gift, though the deed declared that it was made bona fide. Most of the cases illustrative of this doctrine, however, have been like that of Twyne, wherein a debtor, knowing that an execution was to be taken out against him, had sold his property to a vendee having knowledge of the facts, for the express purpose of avoiding a levy, or receiving a consideration which could not be reached by execution. In such cases the fact that he receives a good consideration will not validate the transaction, unless at least the creditor has obtained the benefit of the consideration."

In the case at bar the questions of motive and of good faith were questions of fact, and have been passed upon by the special master. Upon a careful examination of the testimony, I am satisfied that his finding should be sustained.

The questions of law arising in the case are fully covered in the citations to which I have referred. Upon an examination of the testimony of the respondent alone, and giving her the full benefit of all she has claimed, it is impossible to sustain either of the transfers to which the bill in equity is directed.

The transfers and conveyances enumerated in the bill in equity must be held to be fraudulent, and intended to hinder and delay the creditors of the bankrupt. Transfers to the trustee are ordered as prayed for. The decree must be for the complainant, with costs.